## *Ex parte* The State, *in re* Tate.

*Application for Mandamus to vacate Order discharging Prisoner on Habeas Corpus.*

1. *Constitutional guaranty of right to "speedy public trial."*—The constitutional provision declaring that the accused, in all prosecutions by indictment, has a right to a "speedy public trial" by a jury (Art. I, § 7), while mandatory on the legislative department, necessarily leaves much to the discretion of the General Assembly, in enacting laws which will guard against undue haste on the one hand, to the detriment of the public interests, and improper procrastination on the other, to the denial of the substantial rights of the accused; but it does not entitle the accused to a discharge on account of the failure of the law, while reasonably adapted to secure a speedy trial, to provide against every contingency which may occasion delay in any particular case, or on account of any delay made necessary by the law itself.

2. *Disqualification of presiding judge, as ground for discharge.*—Prosecutions for misdemeanors, pending in the Circuit Court of Jefferson, being transferred by law to the County Court (Sess. Acts 1880-81, p. 144), and exclusive jurisdiction thereof granted to the latter court, the incompetency of the presiding judge to try a particular case, having been of counsel for the prosecution before his appointment, and his refusal to make any order in reference to it, do not entitle the defendant to be dis-

[Ex parte The State, in re Tate.]

charged on *habeas corpus;* since he can waive the incompetency, and consent that the judge may try the case (Code, § 540); and he has a right of appeal to the Circuit Court.

3. *Same; escape by prisoner.*—The accused in this case can not claim to be discharged on account of the incompetency of the presiding judge, because the record further shows that, when the case was transferred to the County Court, the presiding judge of that court was qualified to try it; that the accused then fled the country, forfeiting his appearance bond, and did not return until after the appointment of the disqualified judge, when he surrendered himself. and demanded a trial.

4. *Discharge on habeas corpus, when in custody under legal process, on account of "subsequent act, omission, or event."*—When a person is in custody under valid legal process, and asks to be discharged on *habeas corpus* "by reason of some subsequent act, omission, or event" (Code, § 4962), it may be considered a safe general rule, "that he should not be discharged unless the facts have the legal force and effect of *autrefois acquit.*"

This was an application by petition in the name of the State, on the relation of the Attorney-General, for a writ of *mandamus* and other appropriate process, directed to Hon. H. A. SHARPE, presiding judge of the City Court of Birmingham, commanding him to vacate and set aside an order made by him as such judge, discharging one Thomas Tate from custody on a hearing on *habeas corpus.* The facts are stated in the opinion of the court.

T. N. McCLELLAN, Attorney-General, for the State, cited *People v. Hulloff,* 5 Parker's C. C. 77; 38 Mo. 547; *State v. Williams,* 64 Ala. 316; 1 Bish. Cr. Pr. 951; *McKinney v. People,* 2 Gilm. 540; *State v. Posey,* 7 Rich. 484; *Com. v. Sheriff,* 16 S. & R. 304; 4f Amer. Dec. 604, *note; Ex parte Phillips,* 2 Watts, 366; *State v. Huting,* 21 Mo. 464.

E. T. TALIAFERRO, *contra,* cited *State v. Sims,* 1 Overton, Tenn. 253; *Ex parte Stanley,* 4 Nev. 113; *Ex parte Caples,* 58 Miss. 358; T. U. P. Charlt. 24.

CLOPTON, J.—At the Fall term, 1883, of the Circuit Court for Jefferson county, two indictments, charging misdemeanors, were preferred against Thomas Tate, under each of which he was arrested, and gave bond for his appearance. In July, 1884, the cases were transferred to the County Court, under the act of March 1st, 1881, amending " an act in relation to trials for misdemeanors in Tuskaloosa and other counties therein named," approved March 19th, 1875. By the transfer, and the express provision of the act, exclusive jurisdiction of the cases was vested in the County Court.—Acts, 1874–5, 135 ; Acts, 1880–81, 144. The present judge of the County Court being disqualified to try the cases, by reason of having been employed, before his appointment, as counsel to prosecute, and

refusing to try them, or to make any orders therein, defendant made application to the judge of the City Court of Birmingham, for a writ of *habeas corpus*, and for his discharge from custody. On the return of the sheriff to the writ, an order was made discharging the defendant; and this application is for a *mandamus* to compel the vacation of that order.

The right to the writ of *habeas corpus*, and to a discharge, is not based on the want, or on any excess of jurisdiction; but the defendant, conceding that his original imprisonment was lawful, and conceding the jurisdiction of the County Court, claims that he is entitled to the discharge by reason of a subsequent event—the disqualification of the judge, whereby he is denied the right to a speedy trial. By the Declaration of Rights, the accused, in all prosecutions by indictment, has a right to " a speedy public trial, by an impartial jury of the county or district in which the offense was committed." The constitutional provision contemplates legislative enactments, and may be regarded as mandatory on the legislature—enjoining the duty to organize competent courts, to establish suitable modes of judicial proceedings, and provide adequate machinery for the administration of the criminal law; so that there shall be no unreasonable or unnecessary delay in bringing on a trial. Much must be left to the sound discretion and judgment of the law-maker, to make such provisions as will guard, on the one hand, against undue haste to the detriment of the public interests and safety, and on the other, against improper, unjust, and unwarranted procrastination, to the denial of the rights of the accused. When there have been legislative enactments, reasonably adapted to secure a speedy trial, the constitutional guaranty can not operate to discharge the accused, because of mistaken legislation, or because of a failure to foresee and provide for every contingency which may occasion delay. Continuances in the discretion of the presiding judge, or delay occasioned by want of time to try, or any like necessitating circumstances, do not contravene the right to a speedy trial. The accused is not entitled to a discharge by reason " *of any delay made necessary by the law itself.*"—*Clark v. Com.*, 29 Penn. St. 129. The right of a speedy trial does not operate to deprive the State of a reasonable opportunity of prosecuting criminals. If the laws enacted have the effect to prevent or unduly impede a trial, the appeal must be made to the courts, whose province it is to pronounce them void and inoperative, if violative of the constitution. If the legal enactments be defective and inefficient, the remedy is in the election of competent legislators. The constitution declares the rights, and enjoins the duty to protect. It does not declare the consequence of an entire omission, or of inefficient protection. If a failure

to enact laws, efficacious in judicial opinion to secure speedy trials, operates to entitle the defendant to a discharge, the refusal of the judge to permit the accused to be heard by counsel, or to be confronted by the witnesses against him, must have the same operation. The natural and certain results would be conflicts of jurisdiction, and a review of the decisions and acts of one court by another, on a writ of *habeas corpus.* The framers of the constitution could not, and did not, intend or contemplate any such consequences ; and wisely rested the correction of such evils, and the observance of the original guaranties, on the will and power of the people, whose rights and liberties are involved.

The right of the defendant to a discharge is founded on the failure to provide by law some means by which the cases may be transferred, or some other person appointed to act as judge on the trial. There is not an entire failure to provide a mode by which a trial may be had. The statute fixes the disqualification of the judge, and the statute provides a method for its removal—by the consent of the parties, entered of record, or put in writing.—Code of 1876, § 540. Of course, the defendant will not be compelled to consent ; but the election is afforded of consenting, and having a trial, or declining to consent, and submit to a delay made necessary by the law. It may be said, and truly said, that a defendant is naturally and reasonably unwilling to consent to be tried before a judge who had formerly been employed as counsel to prosecute him. The alternative may be regarded as harsh ; but its harshness is considerably relieved by the provision of law granting an appeal to the Circuit Court, where he can have a trial before a qualified judge, and an impartial jury of the county. At any rate, such is the mode which the legislature, in its wisdom, provided for obtaining in such cases a speedy trial before an impartial judge and jury ; and whether wise or unwise, adequate or inadequate, it is not within the province of the courts to review the policy or expediency of the legislation, or to attempt to remedy its real or supposed defects by judicial legislation.

There is another consideration, which is fatal to defendant's right to a discharge. It appears from his application for the writ of *habeas corpus,* that when the cases were transferred from the Circuit Court, the then judge of the County Court was qualified and competent. The defendant voluntarily left the county, forfeited his appearance bond, and remained away until the present incumbent was appointed. After his appointment, the defendant returned, surrendered himself, and, knowing the legal disqualification of the judge, demanded a trial, without proposing to make the statutory consent, though the prosecution was ready for trial. There was a period of several months,

and the lapse of several terms of the court, when there was no legal impediment to a trial, which was defeated by the design and conduct of the defendant. He is in no position to complain of a failure to provide means or mode by which he may, under such circumstances, have a speedy trial, to the procrastination of which his own unlawful conduct has materially contributed. To establish the doctrine, that, under such circumstances, a defendant is entitled to a discharge, will be, in effect, an encouragement and a reward to violators of the law to flee from justice, and to remain absent until some subsequent event puts it out of the power of the State to grant him immediate trial—to provide an effective mode for escaping punishment. The constitution does not bind the State to procure a speedy trial for an accused, who, having previously thwarted the opportunities for a trial, fails to take the necessary steps to procure one.—*Ex parte Stanley*, 4 Nev. 113.

The statute prohibits the discharge of a defendant on *habeas corpus*, when he is in custody by virtue of process from any court legally constituted, there being no excess of jurisdiction, unless he has become entitled to his discharge by some subsequent act, omission, or event.—Code, § 4962. The disqualification of the judge did not divest the County Court of jurisdiction; and it may be considered a safe general rule, in such cases as this, that a defendant, who is in the custody of the court, having jurisdiction of the subject-matter and the person, on a criminal charge, should not be discharged on *habeas corpus*, unless the facts have the legal force and effect of *autrefois acquit*.

Let *mandamus* issue as applied for.