## *Ex rel* EUBANKS v. COLE, *District Judge.*

No. A-752.    Opinion Filed May 26, 1910.

(109 Pac. 736.)

1. COURTS—Mandamus — Jurisdiction of Criminal Court of Appeals. The Criminal Court of Appeals has jurisdiction and power to issue the writ of mandamus, directed to an inferior court, in the exercise or in aid of its appellate authority, where the same is a proper proceeding in a criminal case.

2. COURTS—Original and Appellate Jurisdiction—Mandamus. A mandamus to an officer is said to be the exercise of original jurisdiction, but a mandamus to an inferior court is in the nature of appellate jurisdiction.

3. HABEAS CORPUS—Mandamus—Delay of Trial — Remedies. When a criminal trial has been arbitrarily postponed, without cause or by reason of prejudice or personal hostility, the court has refused to take any action, or where the case is beyond the exercise of judicial discretion, or where there is a flagrant violation of a constitutional right, or the trial court is without jurisdiction, our Constitution and laws afford a remedy either by habeas corpus, if the accused is in custody, or by mandamus where the accused has been admitted to bail.

4. MANDAMUS—Right to Writ—Other Remedy at Law. A peremptory writ of mandamus will be denied where the relator has a plain and adequate remedy in the ordinary course of the

law, and in no case will the writ issue to control judicial discretion.

5. **TRIAL—Speedy Trial—Construction of Constitution.** Section 20 of the Bill of Rights provides that: "In all criminal prosecutions the accused shall have the right to a speedy and public trial." Section 7047. Snyder's St., provides. "If a defendant, prosecuted for a public offense, whose trial has not been postponed upon his application, is not brought to trial at the next term of court in which the indictment is triable after it is found, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown." The statute constitutes a legislative construction or definition of the constitutional provision.

6. **TRIAL—Speedy Trial—Case.** The relator was indicted at the October, 1909, term of the district court, which term ended February 4, 1910. On February 8th a special term of said court was convened with a special judge, at the instance and request of relator, for the purpose of hearing his motion to quash said indictment. Another special term of said district court was convened on the 28th day of February, 1910, with a special judge. On March 7, 1910, was convened the next regular term, which term was to continue until May 31, 1910. The Legislature in extra session by act of March 25, 1910, provided that the regular term of said district court should commence on the first Monday in January, May, and October each year. The defendant on April 30th moved that the case be dismissed for the reason that he had not been brought to trial at either of said terms, and that the trial had not been postponed upon his application. Held, that the motion to dismiss was properly overruled; that relator's substantial rights were not disparaged, and his constitutional right to a speedy trial was not violated; that the law enacted, and becoming effective while the March term of said district court was being held, operating to terminate said term April 30th, was good and sufficient cause 'for not trying the relator during said March term.

7. **TRIAL—Time—Discretion of Court.** A defendant's constitutional right to a speedy trial is not contravened by continuance in the discretion of. the presiding judge, as to a day later in the term, or by hearing civil cases in advance of criminal cases, or by delay necessitated by the law itself.

8. **TRIAL—Time for Trial—"Next Term of Court."** The "next term of court," within the meaning of section 7047, Snyder's St., refers to and means the next regular term of the court, as distinguished from a special term held for a special purpose.

9. **CRIMINAL LAW—"Appellate" Jurisdiction.** The term "appellate" in the Constitution providing that the original jurisdiction of the Supreme Court shall extend to all criminal cases until a

Criminal Court of Appeals with exclusive appellate jurisdiction in criminal cases shall be established by law, is not used in a restricted sense, but in its broadest sense as embracing the power and jurisdiction to review and correct proceedings of inferior courts in criminal cases, brought before it for determination in the manner provided by law.

(Syllabus by the Court.)

Mandamus on petition of Ira N. Eubanks against Preslie B. Cole, Judge. Writ denied.

The petitioner, Ira N. Eubanks, on May 3, 1910, filed in this court his verified petition for a mandamus, which, omitting the formal parts, reads as follows:

"Comes now Ira N. Eubanks, and respectfully shows to the court: That he stands charged by indictment with the offense of forgery in the district court of Pittsburg county, Okla., said cause being No. 686 on the criminal docket of said court. That the Honorable Preslie B. Cole is the duly elected, qualified, and acting judge of the Fourth judicial district of the state of Oklahoma. That the indictment in said cause was returned into court by the grand jury of Pittsburg county on the 29th day of November, 1909, the same being one of the regular judicial days of the October, 1909, term of said court. That said term of court expired on the 4th day of February, 1910. That the next term of said court began on the 8th day of February, 1910, and continued for two days thereafter, and that the next term of said court began on the 28th day of February, 1910, and continued for two days thereafter, and that the next term of said court began on the 7th day of March, 1910, and continued until April 30, 1910. That on the 7th day of March, 1910, the petitioner was arraigned, and pleaded not guilty to the indictment. That this cause was set for trial for the 21st day of March, 1910, the same being one of the regular judicial days of the March, 1910, term of the said court, on which last-named date the petitioner was present in said court, said court then being in open session, ready, willing, and waiting for trial. That on the 7th day of March, 1910, after the usual motion hour, after petitioner had been arraigned, and when petitioner was not present, the respondent, while presiding as judge of said court, stated to the petit jurors then present that the court fund of Pittsburg county was exhausted. That the certificates for jurors' services would be discounted by the banks 20 per cent. if they were asked to cash them. That he would leave it to

the jurors to decide if they were willing to serve under these conditions, and, if they were not, he would dispense with their services. That the jurors then organized and took a vote as to whether they would serve or not, and a majority voted 'No,' which vote was thereupon reported to the court, whereupon the following order was by the court entered of record: 'Now, on this day, it appearing to the honorable court that there is no money in the county treasury with which to pay jurors and witnesses, and that banks are discounting certificates 20 per cent. and petit jurors having decided not to serve for the reasons above stated, it is therefore ordered by the court that the petit jurors heretofore impaneled on this date be, and they are hereby, discharged from further service at this term, and that all witnesses heretofore subpoenaed in criminal cases be and they are hereby discharged until further orders of this court or by notice of the county attorney to said witnesses.' Whereupon the respondent publicly announced that there would be no criminal cases tried during that term of the court. That the county attorney of Pittsburg county was present and agreed to the discharge of the jurors and witnesses and to the announcement as aforesaid. That on or about the 25th day of March, 1910, the respondent made arrangement with the McAlester Trust Company, whereby the company agreed to take up the certificates at 10 per cent. discount, whereupon the respondent directed that a jury be drawn and summoned to appear on April 4, 1910. That said jury duly drawn and summoned appeared on said 4th day of April, 1910, and was impaneled, and the court and jury proceeded to try civil causes until the 14th day of April, 1910, at which time the jury was discharged. That during the March, 1910, term of said court, the respondent was on the bench in the transaction of the business of the court only 30 days—12 days during the month of March, and 18 days during the month of April—leaving 18 days which might have been used as judicial days, during which no business was transacted by said court. That at no time during said term of court did the state make any effort to bring your petitioner to trial on the said cause. That at no time during the said term was the court occupied in the hearing or trial of criminal cases. That the criminal docket as set by the county attorney for said term of court of March, 1910, was set to cover a period of 12 days. That during said term of 48 judicial days there were no criminal causes tried or called for trial in said court. That your petitioner has at no time applied for or agreed to a postponement of the trial of said cause, but has

at all times been ready and willing for and awaiting trial thereon. That on the 29th day of April, 1910, the same being one of the regular judicial days of the March, 1910, term of said court, your petitioner filed his motion in said court to dismiss said cause No. 686, because he had not been granted a speedy trial on said charge, a copy of which motion is hereto attached, marked 'Exhibit A,' and made a part hereof. That at the time of filing said motion your petitioner requested that the court hear same or set a time for the hearing thereof, but that respondent failed and refused to hear said motion and failed and refused to set same down for hearing, but stated that he would not hear same, but would leave it for another judge to pass on and determine, which statement and which refusal the respondent refused to enter of record. That later during the day your petitioner urged upon the respondent to pass upon said motions immediately or to set an immediate time therefor, petitioner stating as his reason for such request that said cause was set for trial at an early date, to wit, on May 12, 1910, and that petitioner desired, in the event that said motion should be ruled on adversely, to resort to the Criminal Court of Appeals for relief by proceedings in mandamus, but that respondent again refused to pass on said motions. That said motion had been filed in open court, and copy thereof had been duly delivered to the county attorney of Pittsburg county on the said 29th day of April, 1910. That, under the published rules of the district court of Pittsburg county, Saturday, April 30th, was regular motion day in said court and all motions pending stood regularly for hearing on said day. That there had been no showing or purported showing made in response to said motion, and that there had been no response at all made to same by the state or any one else. That respondent was under the rule of said court hearing motions on said date, and your petitioner regularly called up said motion to dismiss and asked that it be passed on but respondent failed and refused to pass on same, and, over petitioner's protest, entered an order continuing said cause for the term assigning no cause therefor either orally or of record, but doing so of his own motion. That respondent further ordered over petitioner's protest that said motion be set for hearing May 5, 1910, and thereupon respondent entered an order declaring himself disqualified in said cause. That respondent refused to assign of record the cause for his disqualification, but stated from the bench that he was not interested, biased, or prejudiced in the cause, or related to any party therein, but that he entered such order because your petitioner is a mem-

ber of the McAlester bar and an officer of said court. The respondent stated, further, that he had not made or attempted to make any arrangements for the assignment of a special judge for his court on the said May 5, 1910, to all of which orders and statements by the said respondent your petitioner duly protested and regularly excepted. That thereafter, on said date the respondent adjourned said March, 1910, term of said court. That by reason of the above-stated facts, the petitioner has been denied his constitutional and statutory right to a speedy trial. That he has by said motion properly and seasonably brought notice of these facts to the district court of Pittsburg county, and it is the official duty of the respondent to dismiss the said cause and discharge your petitioner. That petitioner has no adequate remedy through the ordinary course of the law to require the respondent to perform his duties as herein alleged. Wherefore your petitioner prays this honorable court to issue its peremptory writ of mandamus directed to the respondent herein requiring him to dismiss said cause No. 686 on the criminal docket of the district court of Pittsburg county, and discharge your petitioner therefrom, and for all such further relief as to the court may seem just and equitable."

Exhibit A:

"In the District Court of Pittsburg County, State of Oklahoma. State of Oklahoma v. Ira N. Eubanks and Benedict Elder. Motion to dismiss. Comes now the defendants and move the court to dismiss this cause and discharge the defendants for the following reasons, to wit: That the indictment herein was found at the October, 1909, term of this court; that said term expired Feb. 4th, 1910; that since said date there have been three terms of this court, to wit, beginning Feb. 8th, 1910, and holding for two days, and beginning Feb. 28th, 1910, and holding for two days, and beginning March 7th, 1910, and holding until April 30th, 1910; that defendants have not been brought to trial at either of such terms; that the trial has not been postponed upon the application of the defendants. Wherefore defendants move the court that the cause herein be dismissed and the defendants be discharged. Fuller & Porter and Benedict Elder, Attorneys for Defendants."

After notice to respondent the application was presented in open court on May 4, 1910. The Attorney General, appearing for respondent, filed a motion to dismiss: "For the reason that the Criminal Court of Appeals has no jurisdiction of the subject-

matter thereof." Also a demurrer on the grounds: "First. Because said petition does not state facts sufficient to authorize the issuance of the writ prayed for." Decision on the motion and demurrer was reserved, and an alternative writ issued, directing said respondent as said district judge to dismiss said cause or show cause in this court on or before the 9th day of May, 1910, why the same should not be done.

Respondent has filed answer, which, omitting the formal parts, is as follows:

"That the respondent herein denies each and every material allegation of the relator's petition filed in this cause, except in so far as the same may be hereinafter admitted. Your respondent for further answer says that he admits that he is the duly elected, qualified, and acting judge of the Fourth judicial district of Oklahoma, and as such judge held two regular terms of court in said county, to wit, the October, 1909, term and the March, 1910, term, since the returning of the indictment in said cause numbered 686, but denies that the relator, Ira N. Eubanks, was present in said court on the 21st day of March, 1910, the date said cause was set for trial, ready, willing, and waiting for trial, and denies that said relator was absent on the 7th day of March, 1910, when a jury drawn for the first two weeks of said court and impaneled on said date was discharged by the court, and denies that the court publicly announced that there would be no criminal cause tried during said term of court, and denies that the county attorney of Pittsburg county, Okla., agreed to the discharge of jurors and witnesses as alleged, and denies that on or about the 25th day of March, 1910, or at any other time, the respondent made arrangements with the McAlester Trust Company whereby said company agreed to take up certificates of jurors and witnesses in said court at ten per cent. discount, and denies that the state at no time during said term of court made an effort to bring the relator to trial in said cause, and denies that the relator at any time objected to a postponement of the said trial of said cause, or that he was ready and willing and waiting for trial as alleged, and denies that respondent refused to assign of record the cause for his disqualification as judge to sit in said cause, or that the respondent stated that he had made no attempt to make arrangements for the assignment of a special judge for his court to hear and determine the motion to dismiss in said cause numbered 686

on the 5th day of May, 1910, and denies that thereafter the respondent adjourned said March term of court.

"Your respondent, further answering herein, alleges and says that on the 22d day of December, 1908, the Supreme Court of the state of Oklahoma made an order setting a regular term of the district court at McAlester in said Pittsburg county, Okla., commencing on the first Monday in October, 1909; that a copy of said order is hereto attached and marked 'Exhibit A,' and made a part hereof; that thereafter, on the 2d day of February, 1910, said Supreme Court of said state of Oklahoma made an order extending said October, 1909, term up to and including the 4th day of February, 1910, a copy of which order is hereto attached, marked 'Exhibit B' and made a part hereof; that on the 1st day of December, 1909, said Supreme Court of Oklahoma made an order setting the next and regular term of said district court at McAlester in said Pittsburg county, Okla., commencing on the first Monday in March, 1910, the same being the 7th day thereof, and ending on the 31st day of May, 1910; that a copy of said order is hereto attached, marked 'Exhibit C,' and made a part hereof.

"Your respondent further says that a term of said district court was begun on the 8th day of February, 1910, and continued for two days thereafter as alleged in relator's petition, but that same was not a regular term at which criminal or civil causes could have been tried by jury, but that it was a special term which was called and set by said Supreme Court at the instance and request of said relator, Ira N. Eubanks, or by Honorable George W. Clark, district judge of Oklahoma county, who sat as special judge at said term, for the purpose of hearing motions to quash the indictment in said cause number six hundred and eighty-six, and other causes pending in said court in which your respondent was disqualified, and that said special term was not called at the request of the respondent, but at a time when your respondent was absent in McIntosh county, Okla., holding his regular term of court for said county, which was begun at Eufaula on the 7th day of February, 1910, and ended on the 26th day of February, 1910, and that a motion to quash was heard and acted upon by the said district judge, George W. Clark, at said special term in said cause No. 686 on the 10th day of February, 1910; that copies of the orders of the Supreme Court calling said special term are hereto attached, marked 'Exhibit D' and 'Exhibit E,' and the order of said Honorable George W. Clark, as special judge aforesaid, upon the hearing of said motion as to the defendants

in said cause No. 686, is hereto attached marked 'Exhibit F,' and made a part hereof; that a copy of the order of the Supreme Court setting said February term, 1910, within and for McIntosh county, Okla., is attached hereto, marked 'Exhibit C,' and made a part hereof.

"Your respondent further says that a two-day term of said district court at McAlester for said Pittsburg county was begun and held on the 28th day of February, 1910, as alleged in the relator's petition, but that same was a special term called by the Supreme Court of the state of Oklahoma at the request of Hon. John Caruthers, district judge of the Ninth judicial district of the state of Oklahoma, for the purpose of rendering judgment in an election contest case No. 534, M. B. Arendell v. I. E. Mahaffey and G. L. Midcalf, in which your respondent was disqualified to sit as judge, and at which term no causes, civil or criminal, were tried or heard or set for trial or could be tried, other than as above stated. That copies of the order of the Supreme Court calling said special term are hereto attached, marked 'Exhibit G' and 'Exhibit H,' and made a part hereof.

"The respondent further says: That the indictment against the relator in said cause numbered 686 was returned on the 29th day of November, 1909, same being a day of the regular October, 1909, term of said district court, and that thereafter, on February 4, 1910, during said term, said cause was continued because of the crowded condition of the docket of said court as said cause could not be reached for trial. That a copy of the order of the court continuing said cause is hereto attached, marked 'Exhibit I,' and made a part hereof. That the next regular term of said district court, as heretofore stated, commenced on the 7th day of March, 1910, and ended on the 31st day of May, 1910, and that on the 7th day of March, 1910, district court convened in pursuance to the order setting same (see Exhibit C hereto attached and made part hereof), and a petit jury appeared in said court for the trial of criminal causes, and upon the organization of said jury, it being shown that there were no funds on hand in the county treasury with which to pay jurors and witnesses, and the county commissioners having refused to issue warrants or to approve the certificates of jurors and witnesses until July or August, 1910, and it appearing that said jurors and witnesses were unable to secure funds with which to pay their expenses while attending said court, except to discount their certificates at from 20 to 30 per

4 Cr.—3

cent., thereupon your respondent decided that it would best subserve the interest of the state and county that said jury be discharged until arrangements could be made for proper payment of such expenses, and thereupon the respondent did discharge said jury which had been summoned to serve for two weeks, and did temporarily postpone the trial of any cause, but announcing at the same time that no causes would be continued for the term, or their setting changed until a later date, for the reason that the judge of said court would endeavor to raise funds with which to pay the expenses of running said court, and that as said term would last until the 31st day of May, 1910, same being nearly three months off, that there would be plenty of time to advance the setting of all criminal causes on the docket of said court, and set said docket, including cause No. 686, for trial either in April or May of said March term, and your respondent states that in truth and in fact no causes were then continued, but were allowed to stand on their original setting made on said docket, and that the relator was present and in court and made no objection or protest against the action of the court, but remained silent, and by such silence assented and agreed thereto.

"Your respondent further says: That the civil docket for said March term commenced on the 4th day of April, 1910, and that on or about the 2d day of March, 1910, your respondent did perfect arrangements with Mr. E. C. Million, a banker of McAlester, Okla., whereby the said Mr. Million agreed to personally pay the expenses of jurors and witnesses for the remainder of said March term at a small reasonable discount, which was done by him, not as a speculation, but as an accommodation to the county and state. That said arrangements for funds was made after the dates on which the criminal cases for said term had been set, and too late to then try same on their original settings, but prior to the beginning of the civil docket, and it being deemed advisable by your respondent that it would be to the best interest of the public and litigants to call a jury after said arrangements for funds had been made, and try first the civil docket upon its original setting in April, and then advance and reset all criminal cases for trial in the month of May, 1910, during said March, 1910, term, a jury was thereupon called, and the trial of civil cases began on the 4th day of April, 1910, in pursuance to said original setting of said civil docket, and continued until all such cases had been disposed of during said term. That thereafter, about the —— day of April, 1910, and during said March term,

your respondent was preparing to have all criminal causes, including said cause No. 686, advanced and reset for trial in the month of May, 1910, during said March term, when he was informed and learned for the first time that the Legislature of the state of Oklahoma had passed an act changing said terms of court for said Pittsburg county, and fixing the next term to begin in said county on the first Monday in May, 1910, and by operation of law terminating his March term on the 30th day of April, 1910, instead of May 31, 1910, as fixed by order of the Supreme Court. That said act changing and terminating said March term as aforesaid was passed and became effective on the 25th day of March, 1910, and after the date said cause No. 686 had been set for trial had passed.

"Your respondent further says that, by reason of the passage of said act changing said terms of court in said county, said criminal cause No. 686 against the relator was prevented from being set and advanced from its former setting of March 21, 1910, and set for another date during said March term, and but for said act changing said terms of court would have been advanced and reset for trial during said March term, to wit, on or about the 12th day of May, 1910, the date upon which it is now set for trial, which was the first term after the returning of the indictment in said cause except special terms held in which special judges were called for special cases. Your respondent further states that said relator was not in court on the 21st day of March, 1910, or at any other time, ready, willing, and waiting for trial, but, on the contrary, has made no preparation for trial at any time, and has never been nor is he now ready for trial, at any time, and has never been nor is he now ready for trial, and that said relator has from time to time filed various motions in said cause which has caused a delay in the preparation for trial thereof. Copies of the orders filing said motions are hereto attached, marked Exhibits 'J,' 'K,' 'L,' 'M,' 'N,' 'O,' 'P,' and made a part hereof.

"Your respondent further says that when he learned of the act of the Legislature changing said March, 1910, term of the district court in said Pittsburg county and fixing the next general term to commence on said first Monday in May, 1910, he ordered said criminal docket and said cause No. 686 set for trial during said May term, and that said cause is now set for trial on the 12th day of May, 1910, and that the state is now making preparation for trial on said date. Your respondent further says:

That on the 29th day of April, 1910, same being a day of the regular March term, 1910, of said district court and the first regular term after the returning of said indictment, the relator filed in said district court a motion to dismiss said cause No. 686, alleging that he had not been given a speedy trial. A copy of said motion to dismiss is hereto attached, marked 'Exhibit Q,' and made a part hereof. That thereafter, on the 30th day of April, 1910, your respondent, without having passed on said motion, made an order setting the hearing of said motion for the 5th day of May, 1910 (see Exhibit R), at which time arrangements were being made for a special judge to sit in said cause and hear said motion, and thereafter, on the 30th·day of April, 1910, in said court, respondent made an order disqualifying himself to sit as judge in the hearing of said motion or the trial of said cause No. 686, a copy of said order being hereto attached marked 'Exhibit S,' and made a part hereof. That thereafter, on the 5th day of May, 1910, by order of the Supreme Court of the state of Oklahoma, Honorable R. M. Rainey, district judge of the Seventh judicial district of the state of Oklahoma, was ordered to sit as special judge in the hearing of said motion to dismiss, and after hearing the facts set forth in said motion, and issue joined therein, the presentation of authorities, and argument of counsel, both for the relator and the state, did overrule said motion, and refused to dismiss said cause, holding, first, that the changing of the terms of said court by the Legislature was good cause shown for the postponement to the May term, 1910, and, second, that the motion of the relator to dismiss said cause was filed during and before the end of the March term, same being the first regular term at which a trial could have been had after the returning of the indictment. That a copy of said order of court overruling said motion is hereto attached, marked 'Exhibit T,' and made a part hereof.

"Your respondent further says that at the end of the March term, 1910, an order continuing all cases then pending was made because same could not be reached, a copy of which said order is hereto attached, marked 'Exhibit U,' and made a part hereof. Your respondent further says that said district court and the officials thereof have at all times used all proper and necessary diligence and made every reasonable effort in their power to give said relator a speedy trial in said cause No. 686, and that said cause was continued and postponed to 'the May term, 1910, of said court, because of said change made by the Legislature in the setting

of said March term, and that same was without any fault or negligence on the part of your respondent, and that the relator has suffered no wrong or injury by reason thereof; and that your respondent is disqualified to sit in said cause either for trial or to enter a dismissal thereof upon said motion."

*Fuller & Porter* and *Benedict Elder,* for petitioner.—On question of jurisdiction: *Marbury v. Madison,* 1 Cranch, 137; *Ex parte Crane,* 5 Pet. 190; *Lane v. Charles,* 5 Mo. 285; *Johnson v. Atwood,* 2 Stewart (Ala.) 225.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for respondent.

DOYLE, JUDGE. (after stating the facts as above). The motion to dismiss presents the preliminary proposition: Has this court jurisdiction of the cause? The question of jurisdiction must be settled by a reference to the Constitution and the statutes. By the provisions of section 2, art. 7, of the Constitution of this state, and an act of the Second Legislature entitled, "An act perpetuating the Criminal Court of Appeals, defining its duties, powers, and jurisdictions," approved March 2, 1909, this court is given exclusive appellate jurisdiction in all criminal causes. The act contains the following provisions:

"Sec. 7. The Criminal Court of Appeals shall have exclusive appellate jurisdiction in all criminal cases appealed from county and district courts in this state, and such other courts as may be established by law.

"Sec. 8. The appellate and original jurisdiction of the Criminal Court of Appeals shall be invoked in the manner prescribed by law.

"Sec. 9. The Criminal Court of Appeals shall have exclusive appellate jurisdiction coextensive with the limits of the state in all criminal cases, in the manner, and under such regulations as may be prescribed by law.

"Sec. 10. Said court and judges thereof shall have the power to issue writs of *habeas corpus;* and, under such regulations as may be prescribed by law, issue such writs as may be necessary to exercise its jurisdiction; and may prescribe and promulgate such rules for the government of said court as it may deem necessary.

"Sec. 11. Said court shall have power, upon affidavit or otherwise, to ascertain such matters of fact as may be necessary to the exercise of its jurisdiction." (Laws 1909, c. 14, art. 2.)

Upon a careful consideration of the law, we are of opinion that this court has the jurisdiction and power to issue the writ of mandamus where the same is a proper proceeding in a criminal case. As we view it, the proceeding in this case seeks only to invoke the exercise of the exclusive appellate jurisdiction of this court. This is a court of special jurisdiction, limited in the exercise of its powers exclusively to criminal cases, and it is undoubtedly true that, except in cases where under the law this court has original jurisdiction, all exercise of power in other cases must be in virtue of its appellate jurisdiction, and the writ of mandamus can be issued only in the exercise or in aid of its appellate authority. A mandamus to an inferior court is in the nature of appellate jurisdiction. The term "appellate," in the constitutional phrase, "a Criminal Court of Appeals with exclusive appellate jurisdiction in criminal cases," is not used in a restricted sense, but in its broadest sense, as embracing the power and jurisdiction to review and correct the proceedings of inferior courts in criminal cases, brought before it for determination, in the manner provided by law. The statute prescribes the procedure by which such proceedings shall be brought before this court, and among the other modes prescribed the writ of mandamus may be a proper proceeding. Snyder's St. §§ 2016, 6224. The Supreme Court of the United States, with a few enumerated exceptions, has only appellate jurisdiction under the Constitution of the United States, and Congress has not the power to confer original jurisdiction on it. Consequently that court cannot ordinarily issue an original writ of mandamus. *Marbury v. Madison,* 1 Cranch, 137, 2 L. Ed. 60. However, the practice of issuing such writs as an exercise of its appellate jurisdiction and in aid of its appellate jurisdiction has been asserted and upheld in numerous cases.

In the case of *Ex parte Crane,* 5 Pet. 190, 8 L. Ed. 92, which was an application for a mandamus to the circuit court of the United States for the Southern district of New York, command-

ing the court to review the settlement of several bills of exceptions, Chief Justice Marshall, delivering the opinion of the court, said:

"A doubt has been suggested respecting the power of the court to issue this writ. The question was not discussed at the bar, but has been considered by the judges. It is proper that it should be settled, and the opinion of the court announced. We have determined that the power exists. Without going extensively into this subject, we think it proper to state, briefly, the foundation of our opinion. In England the writ of mandamus is defined to be a command issuing in the king's name, from the Court of King's Bench, and directed to any person, corporation, or inferior court of judicature within the king's dominions, requiring them to do some particular thing therein specified, which appertains to their office and duty, and which the court of King's Bench has previously determined, or at least supposes to be consonant to right and justice." Blackstone adds: "That it issues to the judges of any inferior court commanding them to do justice according to the powers of their office, whenever the same is delayed; for it is the peculiar business of the Court of King's Bench to superintend all other inferior tribunals, and therein to enforce the due exercise of these judicial or ministerial powers with which the crown or Legislature have invested them, and this, not only by restraining their excesses, but also by quickening their negligence, and obviating their denial of justice. 3 Bl. Com."

Continuing, the eminent Chief Justice makes the following distinction:

"A mandamus to an officer is held to be the exercise of original jurisdiction; but a mandamus to an inferior court of the United States is in the nature of appellate jurisdiction."

In the case of *Ex parte Bradley,* 7 Wall. 365, 19 L. Ed. 814, that court held that mandamus lies to be an inferior federal court to restore to practice an attorney who has been improperly disbarred. Mr. Justice Nelson, speaking for the court, used this language:

"It is true that this remedy even when liberally expounded, affords a far less effectual security to the occupation of attorney than is extended to that of every other class in the community; for we agree that this writ does not lie to control the judicial discretion of the judge or court; and hence, where the act complained of rested in the exercise of this discretion, the remedy

fails. But this discretion is not unlimited, for, if it be exercised with manifest injustice, the Court of King's Bench will command its due exercise. It must be a sound discretion and according to law. As said by Chief Justice Taney, in *Ex parte Secombe* [19 How. 13, 15 L. Ed. 565]: 'The power, however, is not an arbitrary and despotic one, to be exercised at the pleasure of the court, or from passion, prejudice, or personal hostility.' And by Chief Justice Marshall, in *Ex parte Burr* [9 Wheat. 530, 6. L. Ed. 152]: "The court is not inclined to interpose, unless it were in a case where the conduct of the Circuit or District Court was irregular, or was flagrantly improper.' "

In the case of *People v. Bacon*, 18 Mich. 247, the court said: "Where a mandamus issues to direct the action of a legal tribunal proceeding in the course of justice, it is an exercise of supervisory judicial control, and is in the nature of appellate action. In other cases it is generally, if not always, an exercise of original jurisdiction."

In this state a person charged with a criminal offense has an absolute right to a speedy trial, in order that, if innocent, he may go free. The Bill of Rights provides that: "Right and justice shall be administered without sale, delay, denial or prejudice." And that: "In all criminal prosecutions the accused shall have the right to a speedy and public trial."

If we comprehend the purport of the constitutional guaranty, it means that no trial court shall arbitrarily without cause, or by reason of passion, prejudice, or personal hostility, deny to a defendant the right of a speedy trial. And when his trial has been arbitrarily postponed, or the court has refused to take any action, and the case is beyond the exercise of judicial discretion or there is a flagrant violation of constitutional right, or the trial court is without jurisdiction, our Constitution and laws afford a remedy, either by *habeas corpus,* if the accused is in custody, or by mandamus, where the accused has been admitted to bail, and this court as the exclusive appellate court in criminal cases has jurisdiction to grant relief. However, where the issue involves only the exercise of judicial discretion, there is a plain and adequate remedy in the ordinary course of the law. *Ex rel. Sims v. Caruthers, Judge,* 1 Okla. Cr. 428, 98 Pac. 474; *Ex parte Fowler,* 3

Okla. Cr. 196, 105 Pac. 180. The petition alleges facts sufficient at least to justify a rule to show cause or the allowance of an alternative writ, and for this reason the demurrer is overruled.

The preliminary objections to the exercise of our jurisdiction having been disposed of, the case is now before us on the answer made by the respondent as district judge to the alternative writ. The statements in the answer are conclusive, and must be taken as true, and the question is whether a peremptory writ of mandamus should be issued notwithstanding the answer. Section 7047, Snyder's St., provides:

"If a defendant, prosecuted for a public offense, whose trial has not been postponed upon his application, is not brought to trial at the next term of the court in which the indictment is triable after it is found, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown."

To epitomize the facts, the relator was indicted at the October, 1909, term of the district court, which term ended on the 4th day of February, 1910. On the 8th day of February, 1910, a special term of said district court convened, with Hon. G. W. Clark, presiding judge, at the instance and request of relator, for the purpose of hearing his motion to quash said indictment. Another special term of said district court convened on the 28th day of February, 1910, with Hon. John Caruthers, presiding judge, for the purpose of rendering judgment in an election contest case, wherein respondent was disqualified to sit as judge. On the 31st day of December, 1909, the Supreme Court ordered that the next regular term of the district court of Pittsburg county should commence on the first Monday in March, 1910, and extend up to and including the 31st day of May, 1910. The Legislature in extraordinary session (Act March 25, 1910) provided that the regular terms of the district court of Pittsburg county should commence on the first Monday in January, May, and October each year. On the 29th day of April, 1910, relator filed his motion to dismiss. Whereupon respondent made an order setting the hearing on said motion for May 5th. On May 5th Hon. R. M. Rainey, as presiding judge, overruled said motion to dismiss, and

set the case May 12, 1910, for trial. Upon the facts as stated in the answer, the relator's constitutional right to a speedy trial has not been violated or infringed upon.

The provision of Procedure Criminal, above quoted, is intended as a legislative declaration of what is and what is not a reasonable and proper delay in bringing an accused person to trial in respect to his constitutional right aforesaid. The authorities uniformly hold that such statutes are enacted for the purpose of enforcing the constitutional right, and that they constitute a legislative construction or definition of the constitutional provision. *State v. Keefe,* 17 Wyo. 227, 98 Pac. 122, 22 L. R. A. (N. S.) 896; *Newlin v. People,* 221 Ill. 166, 77 N. E. 529; *State v. Kuhn,* 154 Ind. 450, 57 N. E. 106; *Benton v. Commonwealth,* 91 Va. 782, 21 S. E. 495; *State v. Dewey,* 73 Kan. 735, 88 Pac. 881.

In the case of *Ex parte Stanley,* 4 Nev. 113, Justice Lewis, delivering the opinion of the court, said:

"That all persons held on a criminal charge have the legal right to demand a speedy and impartial trial by jury there can at this time be no doubt. The right was guaranteed to the English people by the Great Charter. It has been confirmed in subsequent Bills of Rights; iterated and reiterated by the courts, and defended and protected by the representatives of the people with jealous care and resolute courage. In this country the same right is generally guaranteed by the Constitutions of the respective states, or secured by appropriate legislative enactments. That the defendant may claim this right there is no doubt. But what is to be understood by a speedy trial is the embarrassing question now to be determined. It is very clear that one arrested and accused of crime has not the right to demand a trial immediately upon the accusation or arrest being made. He must wait until a regular term of the court having jurisdiction of the offense with which he is charged, until an indictment is found and presented, and until the prosecution has had a reasonable time to prepare for the trial. Nor does a speedy trial mean a trial immediately upon the presentation of the indictment or the arrest upon it. It simply means that the trial shall take place as soon as possible after the indictment is found, without depriving the prosecution of a reasonable time for preparation. The law is the embodiment of rea-

son and good sense; hence, whilst it secures to every person accused of crime the right to have such charge speedily determined by a competent jury, it does not exact impossibilities, extraordinary efforts, diligence, or exertion from the courts, or the representatives of the state; nor does it contemplate that the right of a speedy trial which is guaranteed to the prisoner shall operate to deprive the state of a reasonable opportunity of fairly prosecuting criminals."

"The term 'speedy trial,' as it occurs in the Constitution, has been judicially interpreted as meaning generally a trial as soon after indictment as the prosecution can, with reasonable diligence, prepare for, regard being had to the terms of court." (12 Cyc. 498.)

"A trial regulated and conducted by fixed rules of law, and any delay created by the operation of those rules, does not work prejudice to any constitutional right of the defendant." (Church on Habeas Corpus, par. 254.)

"A trial conducted according to fixed rules, regulations, and proceedings of law, free from vexations, capricious, and oppressive delays." (6 Ency. L. [2d Ed.] 993.)

By this provision of the statute an absolute right is conferred upon a defendant indicted for, or charged by information with, a public offense, whose trial has not been postponed upon his application to have the case dismissed, unless tried before the end of the second term of the court after indictment found or information filed, unless good cause to the contrary be shown. The statute is for the purpose of carrying into effect the constitutional guaranty of a speedy trial. It was never intended to apply to the facts in a case like the one at bar. Here there was no laches or delay on the part of the state in the spirit and intention of the statute.

The question as to whether or not respondent as district judge erred in holding that he was disqualified and his refusal to hear and determine the case is a question which does not arise in this proceeding and is a question which we do not now consider.

The special terms of said district court so ordered and held cannot be considered in fixing the time in which a defendant may have his case dismissed. The words "next term" mean the next

regular term. The enactment of the statute fixing the terms for the district court of Pittsburg county did not of itself postpone or delay relator's trial. The regular March, 1910, term which would have terminated on the 31st day of May, 1910, was thereby merged into the May term as fixed by the statute. Relator was not, and is not, entitled to have his case dismissed by reason of any delay made necessary by the law itself.

In the case of *Ex parte State, In re Tate,* 76 Ala. 482, it was said:

"By the Declaration of Rights, the accused in all prosecutions by indictment has a right to 'a speedy public trial, by an impartial jury of the county or district in which the offense was committed.' The constitutional provision contemplates legislative enactments, and may be regarded as mandatory on the Legislature. * * * enjoining the duty to organize competent courts, to establish suitable modes of judicial proceedings, and provide adequate machinery for the administration of the criminal law, so that there shall be no unreasonable or unnecessary delay in bringing on a trial. Much must be left to the sound discretion and judgment of the law-maker to make such provisions as will guard on the one hand against undue haste to the detriment of the public interests and safety, and, on the other, against improper, unjust, and unwarranted procrastination, to the denial of the rights of the accused. When there have been legislative enactments, reasonably adapted to secure a speedy trial, the constitutional guaranty cannot operate to discharge the accused, because of mistaken legislation, or because of a failure to foresee and provide for every contingency which may occasion delay. Continuances in the discretion of the presiding judge, or delay occasioned by want of time to try, or any like necessitating circumstances, do not contravene the right to a speedy trial. The accused is not entitled to a discharge by reason of any delay made necessary by the law itself."

The doctrine of this case is quoted with approval in *Sample v. State,* 138 Ala. 259, 36 South. 367. In the case of *Beavers v. Haubert,* 198 U. S. 77, 25 Sup. Ct. 573, 49 L. Ed. 950, Mr. Justice McKenna used this language:

"The right of a speedy trial is necessarily relative. It is consistent with delays, and depends upon circumstances. It secures

rights to a defendant. It does not preclude the rights of public justice."

The question as to whether or not the court erred in discharging the jury first drawn, or the question as to whether or not the court erred by giving preference to civil over criminal cases in the term, is one which we need not discuss other than to state that the regulation of the business of the term is a matter exclusively within the control of the district judge. We find that there has been no unnecessary delay or laches, nor negligence on the part of respondent in securing to relator a speedy trial. His substantial rights have not been disparaged, and his constitutional right to a speedy trial has not been abridged. The motion to dismiss the case was properly overruled by Judge Rainey.

Entertaining these views, the peremptory writ of mandamus will be denied.

FURMAN, PRESIDING JUDGE, and RICHARDSON, JUDGE, concur.