Arthur Vernon **STUCKER, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

No. A–16382.

Court of Criminal Appeals of Oklahoma.

Jan. 19, 1972.

Rehearing Denied Feb. 8, 1972.

David K. Petty, Guymon, for plaintiff in error.

Larry Derryberry, Atty. Gen., Todd Markum, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

Arthur Vernon Stucker, Plaintiff in Error, hereafter referred to as defendant, was tried in the District Court of Texas County, Oklahoma, for the offense of Forgery in the Second Degree, After Former Conviction of a Felony. Defendant was found guilty by a jury in a two-stage proceeding, and the jury assessed defendant's punishment at thirty (30) years confinement in the State Penitentiary. Thereafter, this appeal was perfected to this Court.

On May 22, 1970, defendant was acquitted on another charge of forgery in the same District Court; and at the conclusion of that trial he was arrested on the instant charge and returned to the County Jail. He was taken before the magistrate on June 2, 1970, at which time counsel was appointed for him. Defendant's trial commenced on October 5th, on the same day the jury returned a "guilty verdict" in the first stage of the proceedings; the second stage of defendant's trial was presented the following day when the jury assessed his punishment at thirty (30) years imprisonment. At defendant's request judgment and sentence was imposed on October 7, 1970, and he was immediately transported to the State Penitentiary. The court appointed Mr. David K. Perry to perfect defendant's appeal to this Court.

The State produced evidence showing that the residence of Dr. George Forney, in Cherokee, Oklahoma, was burglarized on the night of January 14, 1970. In that burglary certain jewelry was stolen and approximately Four Hundred Sixty Dollars ($460.00) in traveler's checks, issued by two separate banks in Cherokee, Oklahoma. One set of checks was made in the name of "Ruth Forney" and the other set was made in the name of "Mrs. George Forney." The checks were in the amount of Twenty Dollars ($20.00) each. On the day after the burglary the defendant cashed a Twenty Dollar ($20.00) traveler's check at the Pioneer Bar in Guymon, Oklahoma. Pauline Greer took the check in payment for beer and returned the balance in cash to defendant. The traveler's check had two signatures of Ruth Forney on it, but it was not executed in Pauline Greer's presence; and had been smeared.

Mrs. Forney testified concerning the burglary of her home on January 14th, and described the traveler's checks which she had purchased at the two banks in Cherokee. She identified one signature on the traveler's check as being hers and testified the other signature looked like hers, but seemed to be a tracing. She related however, that it was her policy never to sign the second signature until she cashed a traveler's check. She related also that she did not give the checks to anyone else, nor did she authorize any other person to pass any of the traveler's checks. Dr. Forney testified concerning the burglary and the trip he and Mrs. Forney made with the sheriff and a deputy to Trinidad, Colorado to identify some jewelry, alleged to be stolen property. The jewelry was shown to have been in the possession of the defendant and was found in the home of Mrs. Helen Martinez in Trinidad. The daughter of Mrs. Martinez, Mrs. Margaret Casias, testified that she gave the Trinidad officers permission to enter her mother's home. She related that on one occasion during the time defendant was at her mother's home he told her that his business was "to sell and trade"; and he showed her the jewelry about the middle of January, 1970. This happened just prior to the time her mother and the defendant left to go to Florida. James Casias also testified, that he saw the defendant show the jewelry to his wife, but that he did not see it himself.

Helen Martinez testified and related that defendant lived at her house when he was in Trinidad, Colorado; that about the middle of January he left and was gone for two or three days, and after his return he had certain jewelry and traveler's checks. Shortly thereafter, they went to Florida where they both subsequently were arrested. The Trinidad Sheriff and two of his depu-

ties testified concerning their going with Mrs. Casias, to the home of her mother, Mrs. Martinez; and the subsequent search and seizure of the alleged stolen jewelry. During the trial, State's Exhibit No. 1, which was one of the Twenty Dollar ($20.-00) traveler's checks, was properly introduced into evidence; however, State's Exhibits No. 2 and 3, which consisted of the allegedly stolen "Forney Jewelry", were never properly introduced into evidence. Nonetheless the jewelry was permitted to go to the jury room at the conclusion of the first stage of the trial.

During the second stage of the defendant's trial, a judgment and sentence from Montgomery County, Missouri was introduced showing that defendant had been convicted on a plea of guilty for the offense of robbery in the first degree, was given a fifteen year penitentiary sentence, and was represented by Mr. C. P. Lehnen, a member of the Missouri Bar, in that case. A second judgment and sentence from the Circuit Court of Pike County, Illinois, was introduced for the offense of forgery, and passing and uttering a forged instrument, and defendant was sentenced to serve not less than One (1) nor more than Twenty (20) years in the Illinois State Penitentiary on that plea of guilty. In that case defendant was represented by attorney Russell J. Alvarez. The Illinois judgment and sentence was attested by the court clerk on October 2, 1950.

The State also introduced the testimony of Oklahoma Bureau of Investigation Agent, Perry Town, during the second stage proceeding. He related that he properly advised the defendant of his Constitutional Rights after which he inquired of defendant concerning his prior convictions. He said defendant voluntarily admitted that he had been convicted for an offense of armed robbery, but nothing was offered to support the agent's testimony. This was prejudicial to the defendant.

Defendant did not testify, nor did he offer any evidence in his own behalf at this trial.

In his brief defendant offers three specifications of error, each of which is subdivided into specific arguments.

### I.

 The first proposition asserts that defendant was prejudiced by the admission of incompetent, irrelevant and immaterial evidence and statements regarding defendant's former convictions of felonies, which was repetitive and prejudicial to the defendant. The first argument thereunder asserts that the district attorney, in his opening statement to the jury, read the information alleging defendant's prior conviction of a felony, thereby causing prejudice to him in the first stage of the proceeding. However, the prosecutor's opening statement was not transcribed; and we therefore are unable to say whether or not defendant's contentions contained merit. It is the responsibility of the defense counsel to protect his own record and require such to be recorded, if he desires. Unless the opening statement is included in the record, we are unable to pass judgment thereon. In Pitts v. State, Okl.Cr., 431 P.2d 449 (1968), this Court said with reference to the prosecutor's closing statement, which is also applicable to his opening statement, the following:

> "It has long been the rule that defense counsel has the responsibility to request, and such request must be made of the court reporter at each trial, when he desires to have the closing argument reported. It is defense counsel's sole responsibility to preserve and protect his own record, and that responsibility cannot be shifted to one not a participant in our adversary system of jurisprudence."

It was further stated on page 453:

> "It is well settled that counsel for defense must object to the alleged improper statements by the prosecutor at the time they are made, and move the Court to exclude them from the consideration of the jury; and to make a proper record so that this Court may determine from an examination of the record, whether the alleged

improper remarks were actually made, and if so, whether or not they were invited or provoked by opposing counsel's remarks."

We therefore deny this argument of defendant's brief.

■ It is next argued, under this specification of error, that defendant was prejudiced by the admission of evidence of more than one prior felony conviction. In support of this argument, defendant cites Baeza v. State, Okl.Cr., 478 P.2d 903 (1970). However, notwithstanding this Court's statement, that the best policy is to list but one former conviction, such is not a mandatory requirement and the prosecution may enter more than one former conviction, if they can properly be sustained. It is a foregone conclusion that the more former conviction records introduced by the State offers more opportunity for the State to commit error; but, such is a matter to be considered by the prosecution, and it is not error to introduce more than one prior conviction. We cannot help but observe that there was no identification of the defendant, in relation to the Missouri and Illinois prior convictions; however, there was no objections offered by defendant when these judgments and sentences were introduced, both of which were in the same name as that of the defendant. However, in correspondence from defendant to his attorney, which was attached to and made a part of the defendant's brief, the defendant admitted both convictions. With reference to the Bureau of Investigation Agent's testimony, obviously that alleged proof of former conviction for armed robbery was improper and will be discussed later.

## II.

■ Under his second specification of error, defendant asserts that reversible error was committed when evidence of other crimes was permitted to be introduced. It is first argued that the defendant was prejudiced by reference to the burglary of the home of Dr. Forney in Alfalfa County.

However, Mrs. Forney's testimony and identification of the jewelry returned by the police from Trinidad, Colorado, and the jewelry identified by Mrs. Martinez and her daughter, coupled with the testimony of Pauline Greer and the other testimony by the State, clearly ties in and connects the jewelry theft and the theft of the traveler's checks to the defendant. In Epperson v. State, Okl.Cr., 406 P.2d 1017 (1965), the fourth paragraph of the Syllabus states the following:

"Evidence of separate and similar offenses is admissible when it is material and proper to show (1) Motive, (2) Intent, (3) Absence of mistake or accident, (4) Identity of the person charged with the commission of the crime for which an accused is put on trial, and (5) Common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other."

The facts of the present case clearly fall within the 4th and 5th exceptions in the foregoing syllabus from Epperson v. State, in that the testimony identifies the defendant as the person who passed the forged traveler's check; and secondly, the evidence goes to show a common scheme or plan showing the commission of two or more crimes so related to each other that proof of one tends to establish the other. In the instant case the forged traveler's check was passed on the day following the burglary in Cherokee, Oklahoma. One is left to conclude, without other explanations, that the defendant could have only obtained possession of the traveler's check by stealing it.

■ We do not accept defendant's contention that the search of Mrs. Martinez's home in Trinidad, Colorado, violated defendant's constitutional rights. The record reflects that each time the State attempted to show that Mrs. Casias had her mother's permission to authorize the search of her home in Trinidad, the defendant objected. By the same token, we believe that defendant had "standing" to challenge the legality

of the search, since he was a guest and had the consent of the owner to be there. He need not have possessory interest in the premises to question the search insofar as his property was searched. See: Jones v. United States, 362 U.S. 257 at 261, 80 S.Ct. 725, 4 L.Ed.2d 697; Lindsey v. State, Okl. Cr., 488 P.2d 935; Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154; Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688; Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L. Ed.2d 797; Wing v. State, Okl.Cr., 490 P.2d 1376, at 1380; and Wattenburg v. United States, 9 Cir., 388 F.2d 853.

▆ Apart from standing however, the search was lawful since the owner of the premises had authority to consent to the search. It was in the nature of a lawful search by consent of the third party. Standing and consent are not the same thing. Ordinarily where two or more persons have equal rights to use or occupancy of premises, any one of them is capable of consenting to the search. In People v. Walker, 34 Ill.2d 23, 213 N.E.2d 552,[1] defendant's mother and sister consented to the search of the home, for the pistol defendant used to commit forceful rape. This is true, notwithstanding the fact that defendant gave that address as his residence to obtain a temporary driver's license. Mrs. Martinez testified that the defendant stayed in her home when he was in Trinidad, when she was supposed to be his girlfriend. In Jones v. State, Okl.Cr., 302 P.2d 502 (1956), this Court provided:

> "Constitutional provisions guaranteeing one immunity from an unlawful search and seizure is personal, and one accused will not be heard to object that the search of the property or premises of some third person is the violation of his constitutional rights."

▆ Next under the second specification of error, defendant argues that reversible error was committed when the jewelry obtained from Trinidad, Colorado, was exhibited to the jury and was taken to the jury room, although the evidence was never formally introduced at defendant's trial. This complaint is premised upon the fact that the seizure of the jewelry in Trinidad, Colorado, was illegal, but having determined that the search and seizure was not illegal; and that the jewelry could have been properly introduced into evidence; and that failure to introduce it was apparently through inadvertence or error; we must find this complaint, if error, constituted harmless error only. We observe also that defendant's complaint concerning the testimony of Mrs. Casias, set forth on page 37 of his brief, was testimony she offered in response to a question asked by defense counsel on cross-examination. The defendant cannot invoke error into the record and then attempt to take advantage of it, in an effort to cause a reversal of his conviction. The other testimony complained of by defendant and argued in his brief, concerning defendant's connection with other crimes or offenses, is without merit in that all of such testimony goes to support the proof of the common scheme or plan of defendant, placing it within exceptions to the rule pertaining to the showing of other offenses having been committed.

### III.

▆ The third specification of error complains of the continuous violation of defendant's constitutional and statutory rights. The first argument asserts that the information was not properly verified as required by law. The record reflects that the defendant offered no challenge to the sufficiency of the information until this

---

1. Exceptions thereto are: a landlord cannot consent for tenant, Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828; a wife cannot consent for her husband, Simmons v. State, 94 Okl. Cr. 18, 229 P.2d 615; hotel cannot consent to rented guest's room, Stoner v. State of California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856; and a joint occupant cannot consent to area reserved exclusively for other's use, Reeves v. Warden, 346 F.2d 915.

appeal was undertaken. A motion to quash or set aside the information was not filed; and, defendant entered his plea of not guilty, announced ready at commencement of trial and proceeded to trial. We must therefore deny this complaint as being sufficient to reverse this conviction. In Brown v. State, Okl.Cr., 405 P.2d 698 (1965), this Court stated in the first paragraph of the syllabus:

"When the defendant voluntarily enters his plea of guilty to the information with the advice and aid of counsel without challenging the information by motion to quash or set aside the information, he waives any right to question the preliminary proceedings or any irregularity therein."

■ Defendant next asserts that he was denied his right to a speedy trial. This complaint is premised upon the fact that he was arrested on May 22, 1970, and was not taken before the magistrate until June 2, 1970. Defendant argues that the information filed in the instant case should have been filed at the same time the earlier charge of forgery was filed. That would have required the information to have been set for trial during the same term of court the earlier information was tried. However, we fail to see the merit of this complaint for the reason that it is within the discretion of the District Attorney when he will file the information so long as it is filed within the period of statutory limitations. We observe that defendant's first petition for writ of habeas corpus was filed on June 9, 1970, after the District Attorney moved for a continuance of the preliminary examination from June 30th to July 23, 1970, for the reason of the absence of material evidence. On July 6, 1970, defendant again filed "pro se" a pleading styled "Motion to Prosecute—Ad Prosequendum and/or Alternative for Dismissal of charges." On July 17, 1970, Associate District Judge Don Dale denied that Petition for Writ of Habeas Corpus. On July 31, 1970, defendant filed another Petition for Writ of Habeas Corpus, demanding the charges

be dismissed; and again on August 19, 1970, defendant filed another demand to be tried. On August 21, 1970, a hearing was held on defendant's Petition for Writ of Habeas Corpus by District Judge Merle Lansden, who denied the Writ. Thereafter, defendant was tried at the next regular term of court, which commenced in October, 1970.

"Generally speaking, a 'speedy trial' is one conducted according to prevailing rules, regulations, and proceedings of law free from arbitrary, vexatious and oppressive delays. The right does not require a trial immediately upon arrest, or the filing of an indictment or information; but requires that the trial be had as soon as reasonably possible, within the statutory requirements, without depriving the prosecution of a reasonable time to prepare for trial." Coggins v. Shumate, Okl.Cr., 401 P.2d 995 (1965).

At the time of defendant's trial the statutes required that two terms of district court should be held each year, one commencing in January and the next commencing July 1st. 20 O.S.1961, § 95. "The next term of court within the meaning of the statutes refers to and means the next regular term of the court, as distinguished from a special term held for a special purpose." Eubanks v. Cole, 4 Okl.Cr. 25, 109 P. 736 (1910). See also, Stroud v. State, 57 Okl. Cr. 273, 47 P.2d 883 (1935). In the instant case defendant was informed against on May 22, 1970, and he stood trial at the next term of court in October, 1970. We therefore deny defendant's contention that he was denied a speedy trial. It is not the privilege of one accused of having committed a crime to set the date on which his trial will be held. The requirement is that his trial shall be held as early as possible and as provided for in the State Statutes.

■ After having reviewed the transcript of testimony, we are convinced that defendant received a fair trial in accordance with due process of law. The testimony as it pertained to other offenses clearly connected him with those events and sufficiently showed him in possession

of the traveler's checks and the jewelry taken during the robbery of the Forney residence. However, we will now discuss that part of the trial when the State attempting to prove a former armed robbery conviction, by the alleged extra-judicial admissions of defendant, as allegedly made to Agent Perry Town of the Oklahoma Bureau of Investigation. Such testimony must have caused prejudice to defendant. Notwithstanding the fact that certain incriminating admissions may be admissible in evidence, it is not in accordance with due process of law to attempt to establish the conviction for a serious crime, such as armed robbery, by the sole use of an alleged admission, when no other effort is exerted to sustain that allegation. Even admitting the statement was made and was true, that statement standing alone without the defendant testifying would not be sufficient to sustain an allegation of former conviction. In this case valid judgments and sentences were offered and by attempting to heap more coals on the defendant's head the prosecutor jeopardized his ultimate objective, i. e., enhancement of punishment. Consequently, the sentence imposed by the jury must be modified in the interest of justice. We also commend the court appointed trial counsel and counsel appointed to perfect this appeal, for their outstanding work.

We are therefore of the opinion that the sentence imposed on defendant in this case was excessive due to the prejudicial statements admitted with reference to the former conviction for the offense of armed robbery; and therefore the ends of justice will be better served if the sentence imposed in this case is modified from thirty (30) years to one of fifteen (15) years, and as modified the judgment and sentence should be affirmed.

It is therefore ordered that the sentence imposed in District Court of Texas County, Oklahoma, Case Number CRF–70–77, shall be modified from thirty (30) years impris-

onment, to fifteen (15) years, and as modified, the judgment and sentence is affirmed.

BUSSEY, P. J., concurs in result.

SIMMS, J., concurs.