**Ted Franklin FAULKNER and Stephen Ray Young, Appellants,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–80–259.**

Court of Criminal Appeals of Oklahoma.

June 11, 1982.

Johnie R. O'Neal, Asst. Public Defender, Tulsa, for appellants.

Jan Eric Cartwright, Atty. Gen., Danny K. Shadid, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

Ted Franklin Faulkner and Stephen Ray Young, appellants, were found guilty, in Case No. CRF–78–3172 in the Tulsa County District Court, of Robbery with Firearms, in violation of 21 O.S.1981, § 801. The trial court assessed punishment, in accordance with the jury's verdict, at ninety-nine (99) years in custody of the State Department of

Corrections. From this verdict and sentence the appellants have conjointly perfected this appeal.

In the early morning hours of December 4, 1978, Mr. Nunnelee was awakened by a loud banging noise. When he left his bedroom to investigate the unusual noise, he encountered a man wearing a mask with eye and mouth holes cut from it and holding a shotgun. He was instructed to go back to his bedroom or he would be killed. When Mr. Nunnelee returned to his bedroom he was instructed to lay down on the floor. He was then "hog-tied."

Mrs. Nunnelee and their four children were also tied up by the robbers. Several members of the family testified at trial that they heard the robbers use the name "Ted" while talking to each other. The robbers were in the Nunnelee's home for approximately twenty minutes. The robbers left through the back door when they apparently were surprised by the arrival of an unexpected police car.

The police car was driven by Officer Overton. She had been called to investigate a suspicious van parked near the Nunnelee's residence. Upon investigation, she discovered a woman sitting in the van. A bulletin concerning the Nunnelee robbery was soon broadcast over the police radio. Other officers arrived on the scene. From information gained there, the police went to an apartment building in search of the suspects.

The officers knocked on the apartment door, announced who they were and why they were there. After receiving no answer, the officers opened the unlocked door and entered the apartment. They searched the rooms and found them to be unoccupied. They saw a shotgun barrel in the kitchen and found pieces of fabric lying on the bed. Knowing that the robbers had used a shotgun and wore masks from which eye and mouth holes had been cut, the officers seized these items and left.

■ The appellants allege as their first assignment of error that the jury was improperly informed of the woman's name who was found sitting in a van near the Nunnelee's residence. A review of the record reveals that the prosecutor asked Officer Overton if she knew who the person was that was sitting in the van. She replied, "The young lady's name was Marilyn Rice. She has another name that she goes by, the name of Marilyn Pigeon." Officer Wortham later testified that he believed the woman's name was Marilyn Faulkner. A witness may testify on a matter of which he has personal knowledge. 12 O.S.1981, § 2602. These witnesses' responses accordingly were proper. This evidence then was properly before the jury. This is dispositive of the appellant's first contention.

■ The appellants next contend that once the jury had this information combined with the testimony that the officers left the scene of the robbery and went to a specific apartment in search of two suspects, a violation of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) occurred. We find no merit in this argument as *Bruton* was addressed to the problems that arise when multiple co-defendants stand trial together and both have confessions in which they implicate the other. This situation is not present in the instant case as Marilyn Faulkner was not a codefendant and her statements were not introduced into evidence. We accordingly decline to apply *Bruton* to the instant case.

The appellants allege as their next assignment of error that their head hair samples were illegally seized. They contend that the *Miranda* warnings should have been given before they were requested to provide these samples and that the samples were seized in a manner contrary to this Court's holding in *Cole v. Parr*, 595 P.2d 1349 (Okl.Cr.1979). We do not agree.

■ The appellants in the instant case were approached while in custody by the Sheriff and given a hemostat clamp to remove hair samples from their heads. They cooperated with the Sheriff and personally removed their hair samples. We find that seizing head hair samples in this manner does not offend personal privacy and digni-

ty and thus does not constitute an unwarranted intrusion by the State. *United States v. Weir*, 657 F.2d 1005 (8th Cir. 1981); *United States v. D'Amico*, 408 F.2d 331 (2nd Cir. 1969); *State v. McCumber*, 622 P.2d 353 (Utah 1980). The appellants thus were properly required to provide such samples, as one may properly be required to supply photographs, fingerprints and handwriting samples for identification purposes. See *Garrett v. State*, 525 P.2d 1238 (Okl.Cr. 1974).

The appellants' argument concerning *Cole v. Parr*, supra, will not be accepted by this Court. In *Cole*, we dealt with the situation in which the State wishes to obtain blood, saliva, seminal fluid and pubic hairs from the defendant. These types of specimens go beyond the body's surface and involve a significant intrusion upon one's privacy and dignity. The guidelines in *Cole* were accordingly developed to strike a balance between the State's need ·to obtain such samples and the right to be protected from unwarranted intrusions. We do not feel it is necessary to apply these guidelines to the instant case. As was said in *United States v. D'Amico*, supra, "the clipping by the officer of the few strands of hair from appellant's head was so minor an imposition that the appellant suffered no true humiliation or affront to his dignity."

■ In the third proposition of error, appellants assert that the trial court committed error by failing to suppress evidence gained from a search of the apartment. The officers went to the apartment immediately after investigating the scene of the crime moments after the robbery had been committed. In view of the facts that the officers had probable cause to arrest the appellants for the felony that had just been committed; that the officers had been told that the suspects were armed; that evidence of the crime could have easily have been destroyed; and that the officers had acquired a reasonable belief that the suspects were likely to be at the locale, we find that an emergency situation existed which justified the attempted warrantless arrests under 22 O.S.1981, § 196. It was not feasible for the law enforcement officials to take the time required to secure an arrest warrant, as to do so might have resulted in the escape of the fleeing suspects or in the loss or destruction of evidence.

■ As the officers' presence in the apartment was justified by the need to determine the presence or absence of the suspects, the plain view doctrine was triggered. This Court has often held that an officer lawfully in a place may seize, without obtaining a search warrant, any item he inadvertently discovers in plain view as long as he has probable cause to believe that the item is evidence of a crime. *Tucker v. State*, 620 P.2d 1314 (Okl.Cr.1980).

It is clear from the record that the officers' discoveries were not the result of a thorough search through personal belongings, but rather were inadvertently made while going through the apartment looking for occupants. Additionally, the items found, the shotgun barrel and the fabric believed to be eyeholes cut from the masks, were clearly evidence incriminating the suspects. The items were thus properly seized under the plain view doctrine, and this assignment of error is without merit.

■ The fourth proposition of error argued by the appellants is that the trial court committed error by allowing the State to present the testimony of Douglas Kay. Kay apparently took the appellants to California soon after the robbery in question had occurred. Kay's testimony was relevant as he relayed to the jury incriminating statements made by the appellants concerning a robbery they had recently committed. The time frame of the trip to California from Oklahoma was also circumstantially probative of the appellants' involvement in the crime charged. Appellants' first contention that Kay's testimony should have been excluded as being irrelevant is thus without merit.

Appellants next contend that Kay's testimony was improperly admitted into evidence as it was not corroborated pursuant to 22 O.S.1981, § 742, which reads:

A conviction cannot be had upon the testimony of an *accomplice* unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof. (Emphasis added)

■ The State argues that Kay cannot be considered an accomplice and therefore this statutory requirement for corroboration does not apply. We agree. At most Kay was an accessory as defined by Title 21 O.S.1981, § 173:

All persons who, after the commission of any felony, conceal or aid the offender, with knowledge that he has committed a felony, and with intent that he may avoid or escape from arrest, trial, conviction, or punishment, are accessories.

■ The appellants, however, argue that we should judicially impose a requirement of corroboration upon the testimony of an accessory. We are not persuaded by this argument as an accessory's testimony does not contain the inherent unreliabilities found in an accomplice's testimony. An accessory's guilt is established by acts which occur after a felony has been committed by others. Thus an accessory has nothing to gain or lose, as far as his guilt is concerned, by coming forward with evidence concerning details of how the felony was committed.

This is not true when considering the testimony of those who may be considered as accomplices. They are motivated by the need to point the finger of guilt at the others involved in order to minimize the appearance of their participation in the felony. As an accessory is not in this position, his testimony concerning the details of how the felony was committed as relayed to him by the perpetrator of that felony, need not be corroborated. We accordingly decline to judicially impose the corroboration requirement upon an accessory's testimony.

The appellants next find error in different statements the prosecutor made during his closing arguments to the jury. The first comments the appellants find objectionable are as follows:

Now, how in the world did they know to go to that apartment on North Utica to try to arrest these two guys? I wonder who told them about it? Remember the conversation that the officers had with this man's wife. And he stands up here and tells you that nobody got on that stand with a marriage certificate. A lot of people don't bother doing that, but if there's another story about whose husband this guy is, or whose wife she is, we have not heard it. They can subpoena witnesses just the same as we can.

■ The appellants allege that these statements are in direct violation of *Bruton v. United States,* supra. As discussed previously, we do not find a direct violation of *Bruton* occurred as Ms. Faulkner's statements were not introduced into evidence. The prosecutor's statement in closing argument "Remember the conversation that the officers had with this man's wife" then was not directly based on the evidence. During closing argument, however, one may also comment upon the reasonable inferences to be drawn from the evidence adduced at trial. We believe the prosecutor stated nothing to the jury which they could not have already deduced on their own based on the evidence presented to them.

■ The appellants also allege these comments were improper as they refer to the appellants' failure to take the stand. We do not agree. The prosecutor was commenting on a gap in the evidence and the fact that the defense could subpoena witnesses to fill that gap. We believe that this gap could have been closed by witnesses other than the accused and thus cannot be considered as a comment on the defendants' failure to testify. *Luman v. State,* 626 P.2d 869 (Okl.Cr.1981).

The appellants next contend that this comment was improper as it called upon the appellant Faulkner to subpoena his wife to testify, something which he could not do as her testimony would be excluded under 12 O.S.1981, § 2504. First we note that this

provision in the Oklahoma statutes is inapplicable as it did not go into effect until after the trial. Prior to the enactment of this statute, however, an even more restrictive statute was in effect which would have prevented one's spouse from testifying. 12 O.S.1971, § 385(3).

There is, however, a conflict in the appellant's argument. On the one hand he implies that Ms. Faulkner was not his wife while at the same time he invokes the statute excluding spouses testimony as grounds for finding the prosecutor's remarks to be improper. He cannot have it both ways. We find this contention to be without merit.

The appellants next find error in the following comments:

Look at this evidence in its entirety, don't pick out a piece of it to the exclusion of the rest of it and the next time, if you want to turn these two guys loose on this kind of evidence, the next time the Nunnelee's get robbed, then, by gosh, they better get them a movie camera—

We agree that this was an improper comment. The jury's role is to impartially reach a verdict based upon the evidence submitted to it. This function is difficult enough without being made to feel guilty about possible decisions which they may reach. See *Jones v. State*, 610 P.2d 818 (Okl.Cr.1980). In light of the evidence adduced at trial, however, we do not find that this comment influenced the jury's decisions.

The appellants next assignment of error concerning the prosecutor's comments refers us to the second stage of the bifurcated trial. Although the comments were emotionally based, we do not find them so offensive in the instant case as to warrant modification of the sentences, in light of the evidence presented of the crime charged and of the appellants' prior convictions. *Shelton v. State*, 583 P.2d 1107 (Okl.Cr. 1978).

The appellants finally jointly contend that they are entitled to a new trial based upon an accumulation of errors. Taking into consideration the above discussion on each of the appellants' assignments of errors, we find no merit in this assertion.

Lastly, appellant Young presents a supplemental proposition of error in which he states that the trial court committed reversible error by denying his pro se motion and failing to allow him to represent himself. A review of the record, however, reveals that the appellant Young made a limited request to represent himself for the purpose of making motions but not to include arguing before the jury. One may not both represent himself and at the same time have court-appointed counsel. One or the other must be in charge of the defense in order to preserve orderly procedure. *Smith v. State*, 521 P.2d 832 (Okl.Cr. 1974). We accordingly find that the trial court did not abuse its discretion in overruling Young's motion to proceed in part on a pro se basis.

The judgments and sentences are accordingly affirmed.

CORNISH, J., concurs.

BUSSEY, J., concurs in results.