# HURST v. PITMAN.

No. A-11303.   Jan. 18, 1950.

(213 P. 2d 877.)

Harley V. Hurst, pro se.

Shelton Skinner, Co. Atty., Earl P. Enos, and John L. Green, Assts. Co. Atty., Shawnee, for respondent.

JONES, P. J.   The petitioner, Harley V. Hurst, is an inmate of the United States penitentiary at Leavenworth, Kansas, where he is serving a sentence of 15 years pronounced against him by the United States District Court for the Western District of Oklahoma, upon a plea of guilty to an indictment charging him with the crime of bank robbery, which sentence was pronounced on May 13, 1947.

The petitioner alleges that on or about March 19, 1947, he was arrested in Pottawatomie county, Okla., and delivered to an investigator from the State Bureau of Criminal Investigation, who transferred him to the county jail of Lincoln county; that he remained in the county jail in Lincoln county for 24 hours, at which time he was transferred to the Garfield county jail; that later he was transferred to the federal jail in Oklahoma City; that

while he was incarcerated in the federal jail in Oklahoma City, he was assured by Leo Kuykendall, an agent of the Federal Bureau of Investigation, and by Rex Hawks, Chief of the Oklahoma State Bureau of Investigation, that if petitioner would enter a plea of guilty to the federal charge of bank robbery, no state charges would be filed against him; that accordingly, on May 13, 1947, the petitioner entered a plea of guilty to the federal charge and was immediately, after sentence was pronounced, transported to the federal penitentiary at Leavenworth, Kansas; that thereafter, on June 3, 1947, the county attorney of Pottawatomie county, Okla., advised the warden of the federal penitentiary that he had filed three charges of burglary against the petitioner in the justice of the peace court of Randall Pitman, Jr., in the city of Shawnee in Pottawatomie county, and asked the warden of the penitentiary to place a "hold" or "detainer" against the petitioner so that he could be returned to Pottawatomie county, for trial at the conclusion of his federal sentence.

The petitioner further alleged that he had once been in the custody of Pottawatomie county officers and by them voluntarily surrendered to the F. B. I., and this voluntary action on the part of the Pottawatomie county officials constituted an abandonment of their prosecution; that he had made repeated demands upon the officials of Pottawatomie county to give him an immediate trial on the charges pending against him, or in the alternative that said charges be dismissed so that no detainer would be filed against him in the federal penitentiary. The petitioner then prays for a writ of mandamus directed to the justice of the peace ordering him to dismiss said charges pending against him, or in the alternative to grant him an immediate hearing upon said charges.

The respondent in his response moves to dismiss the action for two reasons: First, the Criminal Court of Appeals has no jurisdiction to issue the writ of mandamus in any case; second, the Criminal Court of Appeals has no jurisdiction to issue the writ of mandamus to the justice of the peace for the reason that the justice of the peace is not a court of record and no appeal will lie from an order of the justice of the peace to the said Criminal Court of Appeals, and that the petition should be presented to the Supreme Court or the district court of Pottawatomie county.

The motion to dismiss was presented in the response in which it was further alleged that the petitioner was not entitled to release upon the facts of the particular case for the reason that he had never been in the jurisdiction of Pottawatomie county, nor the justice of the peace court of Pottawatomie county; that said officials had filed charges of burglary against the petitioner as quickly as they had determined that he was one of the parties who committed the crime of burglary charged against him and two other individuals. The respondent further alleged that he stands ready and willing and anxious to afford the petitioner a preliminary examination as quickly as the warrants of arrest have been served on the petitioner and he is brought before said justice of the peace.

A hearing was had upon the petition and the facts disclose that petitioner was arrested by W. L. Chandler, a policeman of Shawnee, sometime in March, 1947, and he was immediately delivered to two officers, one of whom was an agent of the Federal Bureau of Investigation, and the other an agent of the State Bureau of Investigation; that said officers were waiting in the police station in Shawnee for the petitioner, and immediately after

the policeman, W. L. Chandler, arrived with Hurst, he was delivered to said officers who departed from the city of Shawnee with said Hurst in their custody; that the policeman had no knowledge that the said Hurst had allegedly committed any crimes in Pottawatomie county, and did not inform the sheriff and county attorney, or any of the officials of Pottawatomie county, that he had arrested the said Hurst, but he was arrested at the request of the aforesaid agents of the respective Bureaus of Investigation and delivered to them at their request; that the agents took the petitioner to Chandler, Okla., and thereafter to Garfield county, Okla.; that later, while the petitioner was in the Garfield county jail, he was interviewed by the sheriff of Pottawatomie county, but refused to make a statement concerning certain burglaries which had been committed in Pottawatomie county; that thereafter, while the said Hurst was confined in the federal jail in Oklahoma City, he was again interviewed by the sheriff and assistant county attorney of Pottawatomie county, at which time the said Hurst voluntarily admitted participating in the burglary of various places in Pottawatomie county which are named in the four criminal complaints filed against the petitioner in Pottawatomie county; that after these confessions were made, the sheriff of Pottawatomie county verified certain complaints charging the petitioner with the crime of burglary allegedly committed in Pottawatomie county, which complaints were filed on April 18, 1947, before the respondent, Randall Pitman, Jr., justice of the peace in the city of Shawnee, and warrants of arrest were issued at that time for the said Harley V. Hurst, Isaac Barber, and Carl A. Doll, who were allegedly implicated in the burglaries; that neither the sheriff nor any of his deputies, nor the county attorney, nor his assistants, ever agreed with the petitioner, Hurst, nor with any other

person, that they would not prosecute the cases pending against the petitioner in Pottawatomie county.

The evidence further showed by the testimony of Rex Hawks that he was Chief of the State Bureau of Investigation at the time Hurst was arrested; that Hurst was arrested in connection with several burglaries of banks, stores, and post offices in the State of Oklahoma; that a gang of such people were involved, and it later developed that they had committed over 400 burglaries in the State of Oklahoma; Hawks admitted that he promised some of the persons implicated along with petitioner in the burglaries, that if they would make a full statement as to the burglaries which had been committed and would plead guilty to the federal charges pending against them, that he would ask all state officers not to prosecute on any of the state charges; that he did ask Pottawatomie county officials not to prosecute Hurst, but they insisted upon going ahead with their prosecution.

The first question presented for consideration is the matter of jurisdiction. The contention that this court has no authority to issue the writ of mandamus in any case is wholly without merit. Eubanks v. Cole, District Judge, 4 Okla. Cr. 25, 109 P. 736; McLeod v. Graham, 6 Okla. Cr. 197, 118 P. 160; Brummitt v. Higgins, 80 Okla. Cr. 183, 157 P. 2d 922; Castleberry v. Jones, 68 Okla. Cr. 414, 99 P. 2d 174; Fisk v. Venable, Judge, 61 Okla. Cr. 360, 68 P. 2d 425.

The jurisdiction of this court to act in this particular case is attacked on the ground that in no case may the Criminal Court of Appeals issue the writ of mandamus to a justice of the peace court, for the reason that its right to issue the writ is solely in aid of its appellate jurisdiction, and since no appeal will lie from

the justice of the peace to the Criminal Court of Appeals, that mandamus may not issue to the justice of the peace court.

The Constitution of Oklahoma, article 7, section 2, provides that the appellate jurisdiction of the Supreme Court shall extend to all civil cases and to all criminal cases until a Criminal Court of Appeals *with exclusive appellate jurisdiction in all criminal cases shall be established by law.*

Under this authority granted by the Constitution, the first Legislature after statehood created the Criminal Court of Appeals as it exists today. Tit. 20 O. S. 1941 §§ 31-48. In said legislative act, the Criminal Court of Appeals was given *exclusive* appellate jurisdiction in all criminal cases appealed from the district, superior, and county courts, and all other courts of record that may be established by law. Tit 20 O. S. 1941 § 40. It was further provided that said court may issue such writs as may be necessary to exercise its jurisdiction. Tit. 20 O. S. 1941 § 41.

In Eubanks v. Cole, supra, this Court stated [4 Okla. Cr. 25, 109 P. 741]:

"Upon a careful consideration of the law, we are of opinion that this court has the jurisdiction and power to issue the writ of mandamus where the same is a proper proceeding in a criminal case. As we view it, the proceeding in this case seeks only to invoke the exercise of the exclusive appellate jurisdiction of this court. This is a court of special jurisdiction, limited in the exercise of its powers exclusively to criminal cases, and it is undoubtedly true that, except in cases where under the law this court has original jurisdiction, all exercise of power in other cases must be in virtue of its appellate jurisdiction, and the writ of mandamus can be issued only in the exercise or in aid of its appellate authority. A man-

damus to an inferior court is in the nature of appellate jurisdiction. The term 'appellate,' in the constitutional phrase, 'a Criminal Court of Appeals with exclusive appellate jurisdiction in criminal cases,' is not used in a restricted sense, but in its broadest sense, as embracing the power and jurisdiction to review and correct the proceedings of inferior courts in criminal cases, brought before it for determination, in the manner provided by law. The statute prescribes the procedure by which such proceedings shall be brought before this court, and among the other modes prescribed the writ of mandamus may be a proper proceeding. Snyder's St. §§ 2016, 6224. The Supreme Court of the United States, with a few enumerated exceptions, has the only appellate jurisdiction under the Constitution of the United States, and Congress has not the power to confer original jurisdiction on it. Consequently that court cannot ordinarily issue an original writ of mandamus. Marbury v. Madison, 1 Cranch 137, 2 L. Ed. 60. However, the practice of issuing such writs as an exercise of its appellate jurisdiction and in aid of its appellate jurisdiction has been asserted and upheld in numerous cases.

"In the case of Ex parte Crane, 5 Pet. 190, 8 L. Ed. 92, which was an application for a mandamus to the circuit court of the United States for the Southern district of New York, commandng the court to review the settlement of several bills of exceptions, Chief Justice Marshall, delivering the opinion of the court, said:

" 'A doubt has been suggested respecting the power of the court to issue this writ. The question was not discussed at the bar, but has been considered by the judges. It is proper that it should be settled, and the opinion of the court announced. We have determined that the power exists. Without going extensively into this subject, we think it proper to state, briefly, the foundation of our opinion. In England the writ of mandamus is defined to be a command issuing in the king's name, from the Court of King's Bench, and directed to any person, corporation, or inferior court of judicature within the king's dominions, requiring them to do some particular thing

therein specified, which appertains to their office and duty, and which the court of King's Bench has previously determined, or at least supposes to be consonant to right and justice.' Blackstone adds: 'That it issues to the judges of any inferior court commanding them to do justice according to the powers of their office, whenever the same is delayed; for it is the peculiar business of the Court of King's Bench to superintend all other inferior tribunals, and therein to enforce the due exercise of these judicial or ministerial powers with which the crown or Legislature have invested them, and this, not only by restraining their excesses, but also by quickening their negligence, and obviating their denial of justice.' 3 Bl. Com."

The respondent is correct in his contention that our authority to issue the writ of mandamus is limited to those cases where it is in aid of our appellate jurisdiction, and that by statute appeals will only lie directly from courts of record to this court. However, where the proceeding is before a justice of the peace court, sitting as a committing magistrate for the purpose of holding a preliminary examination for one accused of committing a felony, the proceedings before said justice of the peace may be reduced to writing and filed with the transcript in the district court in case the accused is ordered held to await trial before the district court. If one accused of crime is convicted in the district court, and later appeals to this court, he may urge and present the question of alleged errors before the committing magistrate in connection with the preliminary examination which were a denial of his statutory or constitutional rights; thus it is apparent that although an appeal will not lie directly from a justice of the peace sitting as a committing magistrate to this court, the procedure before the justice of the peace is a step in the prosecution of an individual for a felony which may be reviewed by this court on ap-

peal from a conviction in a court of record, and for that reason the Criminal Court of Appeals has authority to issue the writ of mandamus to a justice of the peace court when said court is sitting as a committing magistrate for the purpose of holding a preliminary examination for one accused of a felony.

It is certain from the historical background and the language used in the Constitution and statutes, that the framers of our Constitution and the Legislature intended, after the creation of the Criminal Court of Appeals, to vest it with exclusive jurisdiction in all criminal matters and to limit the Supreme Court to exclusive jurisdiction in all civil cases.

As was stated in Ex parte Owens, 37 Okla. Cr. 118, page 190, 258 P. 758, 782:

"Under the Constitution and laws of our state the two appellate courts are co-ordinate and exclusive in their respective appellate jurisdictions. Neither can interfere with nor control the other. Neither is sub-ordinate to nor dependent upon the other, but both are responsible to the people from whom they each derived whatever power they respectively possess."

The Supreme Court of Oklahoma agrees with the view that this court has exclusive jurisdiction in all criminal cases, or in matters calling for the construction of penal provisions.

It was thus stated by them in the case of Smythe v. Smythe, 28 Okla. 266, 114 P. 257, 259:

"This being a criminal case this court has no jurisdiction to review the same. It may be that the appellate jursdiction of the Criminal Court of Appeals in this case may be invoked by the plaintiff in error. Further, in all criminal cases, or matters calling for the construction of penal provisions by proceedings in habeas corpus, the jur-

isdiction of that court should be invoked, rather than this."

Although we have jurisdiction to issue the writ of mandamus to the respondent, the facts in the instant case do not justify the issuance of the writ.

The petitioner has never been in the jurisdiction of said justice of the peace court. Warrants of arrest have been issued for Hurst, but have not been served for the reason that he is outside of the State of Oklahoma serving a sentence of imprisonment in a federal penitentiary in another state. The justice of the peace is not authorized nor required to set a date for the preliminary examination of one accused of crime until after the accused has been arrested and brought before the committing magistrate for arraignment upon the complaint filed against him.

The petitioner evidently rests his case upon the Oklahoma constitutional provisions which state that "right and justice shall be administered without sale, denial, delay, or prejudice", Article 2, section 6, and further "in all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed." Article 2, section 20.

Petitioner cannot be tried upon the question of his guilt or innocence of the felony charges filed against him until after he has had or waived a preliminary examination, and been ordered held to await trial in the district court. It is not possible to give him a preliminary examination until after he has been arrested and brought before the committing magistrate. When one accused of a felony is brought before a committing magistrate upon a warrant of arrest, he may do one of two things:

He may demand a preliminary examination, or he may waive it.

We can see where the placing of a detainer against the petitioner might result in depriving him of certain privileges in the penitentiary, and might even as stated by the petitioner result in the refusal of the federal authorities to consider him for a parole. However, these are matters under the control and regulation of the federal authorities and one which is beyond our control. Our only concern is whether the respondent justice of the peace court has proceeded in a manner required by law. It is apparent that he has, and for that reason the writ of mandamus is denied.

BRETT and POWELL, JJ., concur.