Mark **WOOLVERTON** and Keith Woolverton, Petitioners,

v.

The **MULTI–COUNTY GRAND JURY OKLAHOMA COUNTY**, and the Honorable Donald Powers, Respondents.

No. P–91–1020.

Court of Criminal Appeals of Oklahoma.

Sept. 13, 1993.

### ORDER GRANTING PETITION FOR WRIT OF PROHIBITION

The Petitioners filed, in the Oklahoma Supreme Court, an application to assume original jurisdiction and a petition for writ of prohibition concerning the Multicounty Grand Jury, Oklahoma County District Court Case No. CJ–90–8534, MCJG–91–181. After a response to the merits of the application and petition was filed on behalf of Respondents, and after an oral presentation to a referee, the Oklahoma Supreme Court determined the matter to be within the exclusive jurisdiction of this Court and referred it to us for consideration and disposition.

The Multicounty Grand Jury is investigating the death of Ramona Jane Woolverton, former wife and former sister-in-law of Petitioners, who was found dead in her home, apparently as a result of gunshot wounds. As part of this investigation, Petitioners were subpoenaed to appear before the Multicounty Grand Jury. At a hearing in the District Court before the Honorable Donald Powers, District Judge, the Multicounty Grand Jury requested an order directing Petitioners to furnish samples of blood and finger and palm prints (Tr. 3–4, 11:00 a.m.). Judge Powers granted the request.

In order to protect the secrecy of grand jury proceedings, Judge Powers did not review transcripts of the proceedings to determine whether the Multicounty Grand Jury had probable cause to obtain the requested evidence. Judge Powers "pre-suppos[ed] either that the Grand Jury has Probable Cause to make the request, or that I don't need to make that finding ... [b]ecause ... the Grand Jury has the inherent authority to make the request" (Tr. 9–10, 2:00 p.m.).

Petitioners now ask that the Respondents be prohibited from obtaining finger and palm prints and from extracting blood samples. Petitioners contend the State has not met its burden of proof to justify such action. In support of this contention, Petitioners first argue that there is no authority in this State, either by virtue of statute or case law, to compel them, as suspects rather than as accused defendants, to submit to such evasive, discomforting and violative procedures. Secondly, Petitioners submit that the taking of blood samples is subject to analysis under the Fourth Amendment and the due process clause of the United States Constitution. Petitioners finally maintain that the State has failed to make a preliminary showing that the evidence sought is relevant to the investigation and the seizure justified under the circumstances as required by *Cole v. Parr*, 595 P.2d 1349 (Okl.Cr.1979).

This Court has made an in-depth study relative to the issues involved as it relates to the grand jury and the subpoena duces tecum. This Court in its study found a decision by the Supreme Court of Illinois that basically makes the same holdings that we are making herein. We find this

decision persuasive as far as our analysis of the law and probable cause. *In re May 1991 Will County Grand Jury*, 152 Ill.2d 381, 178 Ill.Dec. 406, 604 N.E.2d 929 (1992).

■ There is scant authority in this State concerning the constitutional protection afforded a witness subpoenaed to provide evidence in a grand jury investigation. The Constitution of the State of Oklahoma authorizes grand juries and grants them the power to inquire into and return indictments for all character and grades of offenses. Okla. Const. art. II, § 18. The Oklahoma Legislature has granted multicounty grand juries the power to compel the attendance and testimony of witnesses and to require the production of documents, records and other evidence. 22 O.S. 1991, § 354. Consequently, because the purpose of a grand jury is to determine whether a crime has been committed and who committed it, a grand jury must necessarily use its broad investigatory power to deal with and obtain evidence from suspects and other witnesses who have not yet been and may not be charged with criminal offenses. *See* 22 O.S.1991, §§ 354(A), 705; *see also United States v. Dionisio*, 410 U.S. 1, 15, 93 S.Ct. 764, 772, 35 L.Ed.2d 67, 80 (1973). Based upon the foregoing, Petitioners' first argument, concerning the lack of authority for a grand jury to obtain evidence from a suspect versus an accused defendant, is clearly without merit.

Petitioners' second argument requires a determination of the proper balance between a grand jury's broad investigatory powers, including its authority to obtain evidence, versus the constitutional, or other, protections afforded a person who has been subpoenaed.

■ The grand jury is an investigative body, occupying a unique role in our criminal justice system, which is charged with the responsibility of determining whether a crime has been committed. Okla. Const. art. II, § 18; *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297, 111 S.Ct. 722, 726, 112 L.Ed.2d 795 (1991). The function of the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an of-

fense or has satisfied itself that none has occurred. *Id.*, 498 U.S. at 297, 111 S.Ct. at 726. The grand jury can investigate merely on suspicion that the law is being violated, or even because it wants assurance that it is not. *Id.*, 498 U.S. at 297, 111 S.Ct. at 726. A grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance. *Id.*, 498 U.S. at 300, 111 S.Ct. at 728.

■ However, grand juries are not granted unlimited investigatory powers and they are not licensed to engage in arbitrary fishing expeditions. Nor may they select targets of investigation out of malice or an intent to harass. *Id.* A grand jury subpoena is not some talisman that dissolves all constitutional protections. *Dionisio*, 410 U.S. at 11, 93 S.Ct. at 770, 35 L.Ed.2d at 75. Grand juries are subject to judicial control. *Id.*

■ Petitioners argue the search and seizure clauses of the Oklahoma and United States Constitutions would be violated if the Multicounty Grand Jury is permitted to take samples of their blood and finger and palm prints. The obtaining of physical evidence from a person involves a potential Fourth Amendment violation at two different levels—the "seizure" of the "person" necessary to bring him into contact with government agents, and the subsequent search for and seizure of the evidence. *Dionisio*, 410 U.S. at 8, 93 S.Ct. at 769, 35 L.Ed.2d at 76; *see also Schmerber v. State of California*, 384 U.S. 757, 761, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908, 914 (1966). We find that the first level of Fourth Amendment analysis is not violated nor applicable to the present matter as a subpoena to appear before a grand jury is not a "seizure" within the meaning of the Fourth Amendment. *State v. Thomason*, 538 P.2d 1080, 1087 (Okl.Cr.1975); *see also Dionisio*, 410 U.S. at 9–10, 93 S.Ct. at 769, 35 L.Ed.2d at 76–77; *Branzburg v. Hayes*, 408 U.S. 665, 682, 92 S.Ct. 2646, 2657, 33 L.Ed.2d 626, 640 (1972).

The second level of Fourth Amendment analysis requires serious consideration. Furthermore, the analysis must be applied differently to the taking of blood samples as compared to the taking of finger and palm prints. Our statutes are silent on the procedure to be utilized on issuing a subpoena under the present fact situation. Therefore, we must formulate guidance for judges presiding over grand jury proceedings. We will begin first by addressing the issue of blood samples.

 The intrusion into the body by the extraction of blood plainly involves the broadly conceived reach of a search and seizure and the protections afforded under the Fourth Amendment and Article II, Section 30 of the Oklahoma Constitution. *Sartin v. State*, 617 P.2d 219, 221 (Okl.Cr. 1980). The interest in human dignity and privacy, which the Fourth Amendment protects, forbids intrusions into the body to extract blood on the mere chance that evidence of criminal misconduct might be obtained. *Schmerber*, 384 U.S. at 769–70, 86 S.Ct. at 1835, 16 L.Ed.2d at 918; *Dionisio*, 410 U.S. at 14–15, 93 S.Ct. at 772, 35 L.Ed.2d at 80. Consequently, probable cause is generally considered a threshold requirement for intrusions beneath the skin. *Winston v. Lee*, 470 U.S. 753, 760, 105 S.Ct. 1611, 1616, 84 L.Ed.2d 662 (1985).

 However, the extent to which the Fourth Amendment protects suspects when a grand jury requests blood samples has not been directly addressed by the United States Supreme Court or this Court. In *Henry v. Ryan*, 775 F.Supp. 247 (N.D.Ill. 1991), the United States District Court for the Northern District of Illinois dealt with this situation. The court in *Henry* found that a showing of probable cause must be ruled out in the grand jury context stating:

> A probable cause requirement, ...., seems untenable in the grand jury situation. The purpose of a grand jury is to determine whether there is probable cause to charge an individual with a crime. Burdening a grand jury with a probable cause requirement seems inconsistent with that purpose. For that reason, many courts, most recently the Su-

preme Court, have rejected the idea of requiring a showing of probable cause in connection with a grand jury subpoena. *See United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297, 111 S.Ct. 722, 726, 112 L.Ed.2d 795 (1991) ("the Government cannot be required to justify the issuance of grand jury subpoena by presenting evidence sufficient to establish probable cause").

*Henry*, 775 F.Supp. at 254.

However, upon thorough consideration of this issue, we do not find any justification for lessening a suspect's fourth amendment rights when a grand jury issues a subpoena requiring intrusions beneath the skin of a person. In the federal system, it is mandatory that all felony charges be prosecuted by indictment, unless waived by a defendant. On the other hand, felony charges in Oklahoma have traditionally been prosecuted by the filing of an information, and grand juries have primarily been utilized to investigate public corruption. If a suspect's fourth amendment rights were lessened in the grand jury setting, abuse of the system could possibly occur. For example, in cases where a District Attorney's Office could not establish probable cause to obtain a search warrant for blood or other intrusive physical evidence, the State could circumvent a suspect's constitutional rights by seeking the evidence through a grand jury subpoena. In effect, district attorneys would be provided with a license to obtain evidence without being required to meet constitutional standards required by all other methods of obtaining evidence. Consequently, we find that greater protection is necessary in Oklahoma. To provide otherwise could conceivably result in the abusive use of a grand jury's investigatory powers.

While we recognize that a grand jury's purpose is to establish probable cause, we do not believe it will be too burdensome to require probable cause for a grand jury subpoena in these cases. In addition, a probable cause determination can be judicially made without unduly burdening a

grand jury's investigation or violating grand jury secrecy.

 In order for this determination to be made, the foreman of the grand jury should present an affidavit to the presiding judge. The affidavit should contain facts necessary for a probable cause determination. To preserve the secrecy of the grand jury proceedings, the affidavit shall be kept under seal. If an indictment against the subpoenaed suspect is handed down, the affidavit shall then be unsealed and made a part of the original record in the county in which the indictment is filed. Thereafter, any challenge to the request for intrusive body samples shall be limited to the information contained in the affidavit and must establish that the information was insufficient.

In the present matter, the request for an order for body samples, presented to Judge Powers by the Multicounty Grand Jury, was not made a part of the record before this Court. The ruling made by Judge Powers, which is part of the record, clearly indicates that the requisite probable cause determination was not made. We find that such determinations must be made by Judge Powers before the request for samples of Petitioners' blood may be granted.

 The taking of finger and palm prints, on the other hand, generally does not require a showing of probable cause. *Thomason*, 538 P.2d at 1087. Finger and palm prints are physical characteristics that are constantly exposed to the public. Fingerprinting does not involve an intrusion into the body or personal privacy of an individual, nor does it involve the probing into an individual's private life and thoughts that marks an interrogation or search. Consequently, the taking of finger and palm prints if obtained under proper circumstances does not involve a search or seizure within the contemplation of the Fourth Amendment to the United States Constitution or Article 2, § 30, of the Oklahoma Constitution. *Dionisio*, 410 U.S. at 15, 93 S.Ct. at 772, 35 L.Ed.2d at 80; *see also Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); *Faulkner v. State*, 646 P.2d 1304, 1307 (Okl.Cr.

1982); *Garrett v. State*, 525 P.2d 1238, 1240 (Okl.Cr.1974). Moreover, the guidelines developed in *Cole v. Parr*, 595 P.2d 1349 (Okl.Cr.1979), do not apply to the taking of specimens which do not go beneath the body's surface. *Faulkner*, 646 P.2d at 1307.

 However, in order to prevent perversion of the grand jury's process, we find some quantum of relevance must be established before a subpoena may be issued for physical evidence of this noninvasive nature. Therefore, we hold that a grand jury must demonstrate that a reasonable and individualized suspicion exists before physical evidence of a noninvasive nature may be demanded of a witness. As detailed above, this demonstration may be accomplished through an affidavit by the grand jury foreman. In the instant case, the record clearly shows that a judicial determination of this nature was not made.

Finally, as this order involves procedural changes, rather than substantive changes in the law, we find that the changes made herein are prospective and shall merely apply to cases which shall arise from the date of this order forward.

**IT IS THEREFORE THE ORDER OF THIS COURT** that the petition for writ of prohibition to prevent the taking of Petitioners' finger and palm prints and the extraction of blood samples should be, and is hereby, **GRANTED**.

**IT IS SO ORDERED.**

/s/ Gary L. Lumpkin
GARY L. LUMPKIN,
Presiding Judge

/s/ Charles A. Johnson
CHARLES A. JOHNSON,
Vice Presiding Judge

/s/ James F. Lane
JAMES F. LANE,
Judge,
Specially concurs.

/s/ Reta M. Strubhar
RETA M. STRUBHAR,
Judge

LANE, Judge, specially concurs.

I take one exception to this Order. I would not cite *In re May 1991 Will County Grand Jury*, 152 Ill.2d 381, 178 Ill.Dec. 406, 604 N.E.2d 929 (1992) as authority for Oklahoma law. I believe that it is a well thought out, well written and logical opinion, but it interprets certain provisions of the Illinois Constitution which in no way resemble the appropriate provisions of the Oklahoma Constitution.

In all other respects, I agree with the majority.