2008 OK 36

**MOVANTS TO QUASH MULTICOUNTY
GRAND JURY SUBPOENA,**
Petitioners,

v.

**The Honorable Bryan DIXON,**
Respondent.

No. 104,072.

Supreme Court of Oklahoma.

April 15, 2008.

Robert A. Ravitz, Public Defender of Oklahoma County, Andrea Digilio Miller, Assistant Public Defender of Oklahoma County, Oklahoma City, OK.

W.A. Drew Edmondson, Attorney General, Sandra D. Rinehart, Senior Assistant Attorney General, and Joel-lyn McCormick, Assistant Attorney General, Oklahoma City, OK.

COLBERT, J.

¶1 On April 21, 2005, the Supreme Court granted the Attorney General's application to form a multicounty grand jury. Petitioners subsequently received subpoenas from the multicounty grand jury and asked the supervising judge to quash the subpoenas. They argued that the subpoenas were part of an investigation into alleged criminal activity occurring in only one county, a fact admitted by the Attorney General. The judge denied

Petitioners' request and they filed a petition for a writ of prohibition with the Court of Criminal Appeals. They also requested a stay of the multicounty grand jury proceedings pending the resolution of the issue. The Court of Criminal Appeals issued the stay and referred the matter to this Court for its determination of whether jurisdiction properly lay with the Supreme Court or the Court of Criminal Appeals.

¶ 2 On January 16, 2007, this Court issued an order assuming original jurisdiction and dissolving the stay. We acknowledged that the multicounty grand jury had completed its work, but held that the matter fell within an exception to the doctrine of mootness as an issue of law capable of recurring yet evading review. *Chandler (U.S.A.), Inc. v. Tyree*, 2004 OK 16, ¶ 12, 87 P.3d 598, 601. We then declared that a multicounty grand jury has jurisdiction to investigate crimes occurring in a single county based on section 353(A) of title 22, as amended by the Legislature in 2003.

¶ 3 The Attorney General filed a motion asking this Court to either publish the order or issue a formal opinion. Petitioners sought rehearing on the grounds that the order failed to resolve the larger issue of whether the statutes describing the multicounty grand jury's jurisdiction violate the Oklahoma Constitution. Petitioners also asserted that jurisdiction properly lay with the Court of Criminal Appeals, not the Supreme Court. We directed the parties to file briefs and now issue this opinion on rehearing.

¶ 4 This Court endeavors to resolve a number of issues with this opinion. First, we seek to clarify, to the extent possible, the distinction between those matters in which the Supreme Court exercises full supervisory jurisdiction and those in which the Court of Criminal Appeals exercises appellate jurisdiction over criminal cases. Second, we seek to clarify the jurisdiction of the multicounty grand jury. Third, and tangentially, we seek to clarify the Legislature's power to enact statutes to further the provisions of the Constitution. In the hope of achieving those aims, we begin with an analysis of the con-

current and complementary jurisdictions of the Supreme Court and the Court of Criminal Appeals.

## I. JURISDICTION OF THE SUPREME COURT AND COURT OF CRIMINAL APPEALS

¶ 5 There is a fine line between the jurisdiction of the Supreme Court and that of the Court of Criminal Appeals, particularly when the authority of a grand jury is at issue. Jurisdictional conflicts between the two courts have been mercifully few. "This scarcity of conflict is a testament to both the clarity of jurisdictional boundaries between the two Courts and the constant willingness of the members of each Court to observe and comply with their jurisdictional restrictions." *Carder v. Court of Criminal Appeals*, 1978 OK 130, ¶ 1, 595 P.2d 416, 418.

¶ 6 The Court of Criminal Appeals has exclusive appellate jurisdiction over criminal cases unless that jurisdiction is altered by statute. Okla. Const. art. 7, § 4; *State v. Blevins*, 1992 OK CR 4, ¶ 2, 825 P.2d 270, 271. The Court of Criminal Appeals also has limited jurisdiction to issue writs in aid of its appellate jurisdiction. *State ex rel. Henry v. Mahler*, 1990 OK 3, ¶ 12, 786 P.2d 82, 85; *Hurst v. Pitman*, 1950 OK CR 10, 90 Okla. Crim. 329, 213 P.2d 877, 878 (syl. no. 1 by the Court). However, it has no general superintending power over the lower courts. *Carder*, 1978 OK 130, ¶ 12, 595 P.2d at 419.

¶ 7 The Supreme Court has appellate jurisdiction over all cases arising in law or in equity, with the single exception of criminal cases. Okla. Const. art. 7, § 4; *see also Smith v. Okla. Dep't. of Corr.*, 2001 OK 95, ¶ 6, 37 P.3d 872, 873. The Supreme Court also has general superintending control over all lower courts, agencies, commissions, and boards created by state law. Okla. Const. art. 7, § 4. The Supreme Court also exercises this general superintending control to resolve any conflict in jurisdiction between the Supreme Court and the Court of Criminal Appeals; those decisions are made on a case-by-case basis and are final.[1] *Id;*

1. This "case-by-case" approach necessarily re-

sults in an evolving understanding of the appro-

*Movants to Quash Grand Jury Subpoenas v. Powers*, 1992 OK 142, ¶ 2, 839 P.2d 655, 656; *Mahler*, 1990 OK 3, ¶ 11, 786 P.2d at 85. The Court of Criminal Appeals has no jurisdiction to review decisions of the Supreme Court. *Dancy v. Owens*, 1927 OK 203, ¶ 0, 126 Okla. 37, 258 P. 879, 880 (syl. no. 4 by the Court).

¶ 8 The Legislature has directed the Supreme Court to determine whether to grant the Attorney General's application to convene a multicounty grand jury. Okla. Stat. tit. 22, § 351(A)(3) (Supp.2007). When it grants an application, this Court must issue an order setting forth the grand jury's purpose. *Id.* Once it issues an order to convene the multicounty grand jury, the Supreme Court retains general jurisdiction over the interpretation and application of the order. The question raised here-whether a multicounty grand jury has the jurisdiction to investigate illegal activity occurring in only one county-calls for a general analysis of constitutional and statutory norms as they apply to the multicounty grand jury's jurisdiction. Such an analysis is clearly within this Court's purview.

¶ 9 This Court has exercised this facet of its jurisdiction in the past to determine the extent of a multicounty grand jury's jurisdiction. In *Powers*, the Supreme Court considered the multicounty grand jury's authority to investigate illegal activity during campaigns for public office. We held that "the scope of power and authority of a multicounty grand jury convened by an order of this Court is within the jurisdiction of this Court and is a matter of broad public concern." 1992 OK 142, ¶ 2, 839 P.2d at 656. The Court of Criminal Appeals acknowledged this approach when the Supreme Court referred a subsequent matter arising from the same grand jury to that Court:

> Oklahoma is unusual in that grand jury matters concerning criminal cases fall within the appellate jurisdiction of this Court, whereas, *all other grand jury mat-*

ters, including the empaneling and authority of a grand jury, fall within the exclusive appellate jurisdiction of the Oklahoma Supreme Court. Okla. Const. art. VII, § 4. *Because of such dual jurisdiction over grand jury matters, it is important that the two courts do not take conflicting positions.*

*Griffin Tele., Inc. v. Powers*, 1993 OK CR 12, ¶ 12, 847 P.2d 812, 815 (emphasis added).

¶ 10 We have deferred to the limited jurisdiction of the Court of Criminal Appeals when the determination of the extent of a multicounty grand jury's authority raised issues of criminal procedure uniquely within that Court's expertise. *See Smith*, 2001 OK 95, ¶¶ 6–7, 37 P.3d at 873. In *Woolverton v. Multi–County Grand Jury*, the petitioners filed an original action in the Supreme Court, seeking a writ of prohibition regarding a multicounty grand jury's subpoena for fingerprints, palmprints, and blood samples. 1993 OK CR 42, 859 P.2d 1112. Because it called for an analysis of the constitutional limits of a multi-county grand jury's procedural authority to conduct discovery in the form of a bodily search as part of a criminal investigation, we concluded that the action was within the jurisdiction of the Court of Criminal Appeals and transferred it to that Court.

¶ 11 Unlike *Woolverton*, the present situation requires a generalized analysis of constitutional and statutory norms and triggers this Court's constitutional supervisory role. Okla. Const. art. 7, § 4. This Court is charged by statute with determining the scope of the multicounty grand jury's authority. Okla. Stat. tit. 22, § 351 (Supp.2007). Petitioners' request to return this original action to the Court of Criminal Appeals is denied.

## II. JURISDICTION OF THE MULTICOUNTY GRAND JURY

¶ 12 Grand juries are a matter of constitutional law in Oklahoma. Okla.

---

priate line of demarcation between the Supreme Court's jurisdiction and that of the Court of Criminal Appeals. The results can be confusing when a more recent decision is viewed against the backdrop of older, factually similar cases reaching the opposite conclusion on the jurisdic-

tional issue. *See State ex rel. Henry v. Mahler*, 1990 OK 3, 786 P.2d 82; *Waldon v. Evans*, 1993 OK CR 46, 861 P.2d 311. We acknowledge that confusion, but conclude that a hard-and-fast rule would not serve the ends of justice.

Const., art. 2, § 18.[2] A grand jury can be convened by one of three methods. First, a district judge must convene a grand jury to investigate allegations of criminal acts within a single county if the judge is presented with a petition signed by an appropriate number of qualified electors from that county. Second, a district judge can unilaterally convene a grand jury to investigate allegations of criminal acts within a single county. These first two methods have existed since statehood. In 1971, the Legislature submitted and the voters approved an amendment to article 2, section 18 creating the third method. This method allows the Attorney General to file an application to convene a grand jury to investigate "crimes which are alleged to have been committed in said county or involving multicounty criminal activities."

¶ 13 Petitioners argue that article 2, section 18 permits the Attorney General to convene a grand jury for one of two distinct purposes: (1) to investigate "crimes which are alleged to have been committed in said county;" *or* (2) to investigate "crimes which are alleged ... involving multicounty criminal activities." In other words, Petitioners interpret the constitutional language in the disjunctive, authorizing the Attorney General to convene a grand jury with only one of two possible objectives: *either* to investigate within a single county *or* to investigate in multiple counties.[3] According to Petitioners, the Attorney General is not authorized to convene a multicounty grand jury to investigate activities occurring within a single county. They contend, therefore, that the multicounty grand jury convened by the Attorney General pursuant to this Court's April 21, 2005, order lacked the jurisdiction to subpoena Petitioners as part of an investigation into crimes alleged to have occurred within only one county.[4]

¶ 14 To fully evaluate this claim, we must review the statutes and case law interpreting the constitutional creation of the multicounty grand jury. The Legislature enacted the Multicounty Grand Jury Act in 1987. Okla. Stat. tit. 22, §§ 350–363 (2001 & Supp.2007). Section 351 directs the Attorney General to file the application to convene a multicounty grand jury with the Supreme Court. (The recipient of the application is not specified in the Constitution.) As originally enacted, section 351(A)(1) directed the Attorney General to file an application when he "considers it to be in the public interest to convene a grand jury with jurisdiction extending beyond the boundaries of a single county." Upon granting the application, the Supreme Court was directed by section 351(B)(1) to issue an or-

---

**2.** Article 2 (Bill of Rights), section 18 (Grand Jury) of the Oklahoma Constitution now provides:

A grand jury shall be composed of twelve (12) persons, any nine (9) of whom concurring may find an indictment or true bill. A grand jury shall be convened upon the order of a district judge upon his own motion; or such grand jury shall be ordered by a district judge upon the filing of a petition therefor signed by qualified electors of the county equal to the number of signatures required to propose legislation by a county by initiative petition as provided in Section 5 of Article V of the Oklahoma Constitution, with the minimum number of required signatures being five hundred (500) and the maximum being five thousand (5000); and further providing that in any calendar year in which a grand jury has been convened pursuant to a petition therefor, then any subsequent petition filed during the same calendar year shall require double the minimum number of signatures as were required hereunder for the first petition; *or such grand jury shall be ordered convened upon the filing of a verified application by the Attorney General of the State of Oklahoma who shall have authority to con-*

*duct the grand jury in investigating crimes which are alleged to have been committed in said county or involving multicounty criminal activities;* when so assembled such grand jury shall have power to inquire into and return indictments for all character and grades of crime. All other provisions of the Constitution or the laws of this state in conflict with the provisions of this constitutional amendment are hereby expressly repealed.

The legislature shall enact laws to prevent corruption in making, filing, circulating, and submitting petitions calling for convening a grand jury.

(Emphasis added). The emphasized language was added in 1971. The final paragraph was added in 1995.

**3.** In short, Petitioners interpret the word "or" as "either/or," while the Attorney General interprets it as "and/or."

**4.** The order authorized a grand jury with "the power and authority to inquire into and return indictments for all character and grades of crimes in any and all seventy-seven (77) counties of the State of Oklahoma."

der to "convene a multicounty grand jury having jurisdiction over all counties approved by the State Supreme Court and requested in the application by the Attorney General." In addition, section 353, as originally enacted, provided that the jurisdiction of the multicounty grand jury "shall extend throughout the state or through all counties designated in the State Supreme Court's order."

¶ 15 In *State v. Bezdicek*, the Court of Criminal Appeals declared that a multicounty grand jury lacked the jurisdiction to investigate crimes alleged to have occurred in only one county. 2002 OK CR 28, 53 P.3d 917. *Bezdicek* was an interlocutory appeal from a criminal prosecution arising from a multicounty grand jury investigation. It considered whether evidence obtained pursuant to a multicounty grand jury's subpoena was properly suppressed because the alleged criminal activities did not involve more than one county. The Court concluded that, because section 351(A)(2)(a) permitted the Attorney General to request a multicounty grand jury for "organized crime or public corruption, or both, involving more than one county of the state," it did not grant the multicounty grand jury jurisdiction to investigate within a single county. *Id.* ¶ 4, 53 P.3d at 918.

¶ 16 The Court of Criminal Appeals then examined whether the Constitution provided the missing jurisdiction. It focused on article 2, section 18's language permitting the Attorney General to convene a grand jury to investigate "crimes which are alleged to have been committed in said county or involving multicounty criminal activities," and concluded that the use of "or" implied that the grand jury could be convened *either* to investigate single county criminal activities *or* multicounty criminal activities but not both. *Id.* ¶ 14, 53 P.3d at 920–21. "Nothing in Section 18 gives a grand jury, empaneled for the specific purpose of investigating 'multicounty criminal activities,' the authority to investigate activities isolated to a single county." *Id.* (emphasis omitted). The Court also examined the ballot title used when the constitutional amendment was presented to the voters in 1971 as well as legislative history to conclude that the Legislature did not intend

to authorize multicounty grand juries to investigate criminal activities occurring in a single county. *Id.* ¶¶ 16–19, 53 P.3d at 921–22. Evidence obtained as part of an investigation that exceeded the multicounty grand jury's authority, therefore, was properly suppressed.

¶ 17 The Legislature responded quickly to *Bezdicek* and amended the Multicounty Grand Jury Act to give multicounty grand juries jurisdiction to investigate crimes whether they arise in one county or more than one county. Section 351 now provides that the Supreme Court's order granting the Attorney General's application shall "[c]onvene a multicounty grand jury having jurisdiction . . . in any single county or in multiple counties of this state." Section 353 now provides that "[t]he jurisdiction of a multicounty grand jury . . . shall extend throughout the state, including but not limited to, a single county." Petitioners maintain, however, that these amendments have no effect because the multicounty grand jury's jurisdiction is limited by the Constitution and cannot be changed or expanded by statute.

¶ 18 We, therefore, turn again to the Oklahoma Constitution. One of the earliest opinions issued by this Court states the basic principle of constitutional interpretation with a clarity that still resonates 100 years later:

> In construing a provision of a Constitution, the primary inquiry is to ascertain the intention of the framers, and of the people who adopted the same, and in such construction and determination, technical rules should be disregarded, and, as a rule, a mean between a strict and a liberal construction followed.

*State ex rel. Caldwell v. Hooker*, 1908 OK 244, ¶ 0, 22 Okla. 712, 98 P. 964, 965 (syl. no. 3 by the Court). The intent of those who framed and adopted a constitutional provision must be found in the text if possible; if the text is not ambiguous, courts may not search beyond it for additional meaning. *See Draper v. State*, 1980 OK 117, ¶ 8, 621 P.2d 1142, 1145–46.

¶ 19 Article 2, section 18 authorizes a grand jury convened by the Attorney General to "investigat[e] crimes which are alleged

to have been committed in said county or involving multicounty criminal activities." It seems to this Court that the language is clear and that its reasonable import is that it authorizes a grand jury convened by the Attorney General to investigate crimes whether they occur in one county or more than one county. A contrary conclusion-requiring the Attorney General to determine *before* filing an application for a grand jury whether any possible criminal activity was limited to a single county-presumes uncanny foresight on the part of the Attorney General.[5]

¶ 20 Legislative history provides any clarity missing from the constitutional language. Admittedly, the text of the question placed on the ballot did not add much to the debate, since it merely substituted the phrase "one county" for "said county," while the title of the amendment used the term "Single or Multi–County."[6] *See Bezdicek*, 2002 OK CR 28, ¶¶ 16–19, 53 P.3d at 921–22. On October 25, 1971, however, the Executive Committee of the State Legislative Council (which included the Speaker of the House and the President pro tem of the Senate) issued a press release (incorporating materials dated October 20, 1971) with the following explanation of the proposed amendment:

In addition to present procedures for convening a grand jury, the proposed amendment to Article II, Section 18, orders the convening of a grand jury (in any county of the state) by a district judge upon application by the Attorney General. It also au-

thorizes the Attorney General "to conduct the grand jury in investigating crimes which are alleged to have been committed in said county or involving multicounty criminal activities."

The proposed change does not affect the statutory power of a grand jury to investigate and indict for crimes "committed or triable" within the county where it is convened. *The proposed amendment extends the "reach" of a grand jury investigation to include also "criminal activities" that may occur in counties other than the county where convened.*

(Emphasis added.) That explanation was released by authority of House Concurrent Resolution No. 1002 (1971) which directed the State Legislative Council to inform the press of the nature of proposed constitutional amendments before the election.

¶ 21 It is apparent that the Legislature intended for the amendment to expand the existing grand jury jurisdiction to allow a grand jury to investigate crimes extending beyond a single county. Indeed, the Legislature arguably intended to allow a single county grand jury to investigate multicounty criminal activities so long as it was convened by the Attorney General. This supports the conclusion that the multicounty grand jury has the jurisdiction to investigate crimes whether they occur in one county or many counties. An artificial line between single county grand juries and multicounty grand juries was not, apparently, within the con-

---

5. Obviously, the Court of Criminal Appeals reached the opposite conclusion in *State v. Bezdicek*, 2002 OK CR 28, 53 P.3d 917. We do not lightly disregard that Court's reasoning, but we must reject its holding pursuant to this Court's authority as discussed in part I of this opinion.

6. According to page 5 of a June 1971 document from the Oklahoma Legislative Council, titled "Pending Constitutional Amendments; Legislative Referenda; Initiative Petitions; 1971," the short title of the proposed amendment was:
    Convening of Grand Juries by Elector Petition or by the Attorney General for Investigation of Single or Multi-county Criminal Activities.
    The text of the state question placed on the ballot:
    Shall a Constitutional Amendment amending Article II, Section 18, of the Constitution of the

State of Oklahoma to provide for composition of grand juries; providing that grand juries be convened upon the filing of a petition signed by the qualified electors of a county; establishing numerical signature requirements for the sufficiency of such petitions; *allowing the Attorney General to convene and conduct grand juries, upon the filing of a verified application, to investigate crimes alleged to have been committed in one county or involving multi-county criminal activities;* granting such grand juries power to indict for all character and grades of crimes, be approved by the people?
Oklahoma State Questions Since Statehood 1907–1994, published by the Oklahoma Department of Libraries, December 1994, p. 123 (emphasis added).

templation of the Legislature.[7]

## III. POWER OF THE LEGISLATURE

¶ 22 We further conclude that the Legislature properly exercised its authority to clarify, once it was necessary, the jurisdiction of the multicounty grand jury. "The authority of the Legislature extends to all rightful subjects of legislation not withdrawn by the Constitution or in conflict therewith." *In re House Bill No. 145*, 1951 OK 288, ¶ 0, 205 Okla. 364, 237 P.2d 624, 625 (syl. no. 2 by the Court). The position Petitioners propose would reverse the proper analysis. We do not examine the Constitution to decide whether the Legislature is permitted to act. *Tate v. Logan*, 1961 OK 136, ¶ 19, 362 P.2d 670, 674–75. Rather, we examine the Constitution to decide whether the Legislature is prohibited from acting. *Id.* Constitutional limitations on the Legislature are strictly construed and any doubt is resolved in favor of the Legislature's power to act. *Id.* The Legislature has the power to change a statute enacting a constitutional provision to clarify an interpretation even if it waits many years to do so and the failure to act by previous Legislatures because of a contrary construction or understanding of the right does not impair a future Legislature's right to act. *Id.* ¶ 26, 362 P.2d at 675.

¶ 23 Petitioners argue, however, that this Court has declared article 2, section 18 "self-executing" such that the Legislature cannot enact legislation to extend or alter its effect. *See Bezdicek*, 2002 OK CR 28, ¶ 5, 53 P.3d at 918. This assertion results from an overly broad reading of this Court's statement in *Powers*, where we concluded only that article 2, sections 18 and 19 secured "inviolate the right to trial by jury, [and] the number, unanimity, and impartiality of jurors." 1992 OK 142, ¶ 3, 839 P.2d at 656. "[T]hese two constitutional provisions [are] self executing and mandatory *in these respects*." *Id.* (emphasis added). In addition, this Court held that the constitutional language giving a multicounty grand jury the power to inquire into

and return indictments for all kinds of crimes was self-executing and could not be limited by statute. *Id.* However, the fact that portions of a constitutional provision are self-executing does not mean that the entire provision is self-executing. *See House Bill*, 1951 OK 288, ¶ 0, 237 P.2d at 625 (syl. no. 1 by the Court). Indeed, article 2, section 18 was amended again in 1995 to *direct* the Legislature to enact legislation to prevent corruption in the grand jury process.

¶ 24 Further, even though it "has no power to abridge or extend a provision of the Constitution when the same is self-executing," the Legislature is not completely prevented from acting on a self-executing constitutional provision, *Kiowa County Excise Bd. v. St. Louis–S.F. Ry.*, 1956 OK 157, ¶ 18, 301 P.2d 677, 681. The Legislature retains the power to enact statutes to better protect the rights granted, "provide a more specific and convenient remedy for carrying out" the constitutional language, or supply particulars where the constitutional language is "not as complete as may be desirable." *Hooker*, 1908 OK 244, ¶ 0, 22 Okla. 712, 98 P. at 965 (syl. nos. 4–5 by the Court). The Legislature is limited only in that it may not curtail or place undue burdens on the rights guaranteed by the Constitution. *Id.*

¶ 25 A careful reading of article 2, section 18 demonstrates that it cannot be treated as entirely self-executing. For example, section 18 provides that the Attorney General can file an application to convene a grand jury, but does not specify to whom or to what body that application should be made. The legislatively-authorized explanation of the proposed 1971 amendment to section 18 indicated that the Attorney General would make application to a district judge, but that provision was not actually included in the language of the amendment. In 1987, the Legislature remedied that omission by declaring that the Attorney General should apply to the Supreme Court. Okla. Stat. tit. 22, § 351(A) (Supp.2007).

7. We acknowledge that Petitioners' briefs contained an exhaustive and informative historical analysis of the grand jury system in English and American common law. However, that historical analysis cannot override the constitutional and statutory imperatives under which this Court and the multicounty grand jury operate.

¶ 26 Similarly, the Legislature acted within its authority when it clarified the constitutional language by providing that a multicounty grand jury should have jurisdiction to investigate criminal activities, whether those activities occurred in a single county or multiple counties. In passing and amending the Multicounty Grand Jury Act to address the jurisdiction of the multicounty grand jury, the Legislature properly exercised its authority to clarify the constitutional language and provide specific procedures to carry out the rights contained in article 2, section 18 of the Constitution.[8] *Kiowa County*, 1956 OK 157, 301 P.2d 677; *Hooker*, 1908 OK 244, 22 Okla. 712, 98 P. 964.

## CONCLUSION

¶ 27 The Oklahoma Constitution sets forth three methods for convening a grand jury. The third method allows the Attorney General, upon application and approval, to convene a multicounty grand jury having the jurisdiction to investigate crimes in one or more counties. The Multicounty Grand Jury Act is a proper exercise the Legislature's power to enact legislation to effect the constitutional protections and provisions. Specifically, sections 351 and 353 of title 22, as amended in 2003, do not violate the Constitution.

¶ 28 The subpoenas in question were issued by the multicounty grand jury as part of an investigation into alleged criminal activity taking place in only one county. The subpoenas were a proper exercise of the multicounty grand jury's jurisdiction. The district court, therefore, properly refused to quash the subpoenas.

**ORIGINAL JURISDICTION PREVIOUSLY ASSUMED, REHEARING GRANTED, RELIEF DENIED.**

CONCUR: WINCHESTER, C.J.; EDMONDSON, V.C.J.; HARGRAVE, KAUGER, WATT, TAYLOR, COLBERT, REIF, JJ.

DISSENTS: OPALA, J.

8. However, as this Court and the Court of Criminal Appeals have previously held, the Legislature exceeded its power when it attempted to limit the type of activity subject to grand jury investigation because it directly contradicts the Constitution. *See Bezdicek*, 2002 OK CR 28, ¶ 14, 53 P.3d at 920–921; *Movants to Quash Grand Jury Subpoenas v. Powers*, 1992 OK 142, ¶ 3, 839 P.2d 655, 656.

OPALA, J., dissenting

¶ 1 The dispositive question posed for our decision is whether the text of Art. 2, Sec. 18, Okl. Const., confers on the Attorney General the authority to convene a multicounty grand jury to investigate activities occurring within a single county. The court's answer is in the affirmative. Its pronouncement **relies exclusively** on the legislative "clarification" of the constitutional language, Art. 2, Sec. 18, Okl. Const., contained in the Multicounty Grand Jury Act, 22 O.S.2001 and O.S. Supp. 2007, §§ 351and 353.

¶ 2 **In reaching today's conclusion the court has utterly abdicated its role as the legal system's recognized paramount and exclusive arbiter of the Constitution's meaning.** The Legislature's discretion is not unlimited, although its conclusions are often entitled to much deference. *Marbury v. Madison*, 1 Cranch 137, 176, 2 L.Ed. 60 (1803); *City of Boerne v. Flores*, 521 U.S. 507, 515 and 536, 117 S.Ct. 2157, 2162 and 2172, 138 L.Ed.2d 624 (1997).

¶ 3 I decline to yield to the Legislature the court's paramount and exclusive power to act as the ultimate arbiter of the constitution's text.[1] *Marbury v. Madison, supra; City of Boerne v. Flores, supra.*

1. The ultimate interpretation and determination of the Constitution's meaning remains the province of the Judicial Branch. *Kimel v. Florida Bd. Of Regents*, 528 U.S. 62, 81, 120 S.Ct. 631, 644, 145 L.Ed.2d 522.